RECEIVED IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
SOUTHERN DIVISION

2005 OCT 11  P 2:27

| | |
|---|---|
| WAYNE RUSSELL; RONALD W. RUSSELL as Trustee for The Russell Family Trust; THE RUSSELL FAMILY TRUST, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) CIVIL ACTION NO. 2:05cv972-D |
| TRANSAMERICA OCCIDENTAL LIFE INSURANCE COMPANY; AUGUSTUS KIRBY CLEMENTS III; et al. | ) ) ) ) ) |
| Defendants. | ) ) |

## NOTICE OF REMOVAL

Comes now the defendant Transamerica Occidental Life Insurance Company

("Transamerica") and pursuant to 28 U.S.C. §1441(a), hereby removes this case to the United States

District Court for the Middle District of Alabama, Southern Division, on the following grounds:

1.      This civil action by plaintiffs, Wayne Russell, Ronald W. Russell as Trustee for the

Russell Family Trust and the Russell Family Trust, against August Kirby Clements III ("Clements")

and Transamerica was filed on July 29, 2005, in the Circuit Court of Montgomery County, Alabama,

being Civil Action No. CV-05-1924, where it is now pending.[1]

_____

[1]Although the complaint is brought on behalf of three plaintiffs, all of the allegations and demands for judgement are made on behalf of only one "Plaintiff" which is apparently Wayne Russell because, according to his testimony in *Russell I*, he was the only person who discussed the policy at issue with Clements (Russell depo. pp. 107-08, Ex. B). The complaint is also vague and inconsistent with respect to the payment of premiums. Wayne Russell testified that it was his children who actually paid the premiums on the policy at issue but Russell's children are not parties to this action and the money used to pay the premiums came from other policies which Wayne Russell had funded (Russell depo. pp. 112-113, 134-135, Ex. B). According to Wayne Russell and as shown on the application, the owner and beneficiary of the policy at issue is the Russell Insurance Trust with George Russell as trustee, neither of which are parties to this action (Ex. E, Application ¶ 15 and 16). Accordingly and consistent with the allegations of the complaint, Transamerica will

## THE NOTICE OF REMOVAL IS TIMELY FILED.

2.    Both Transamerica and Clements were served with process on September 12, 2005.

3.    Plaintiff has not substituted any real party for any fictitious party identified in the Complaint. For purposes of removal, "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(a).

4.    In accordance with 28 U.S.C. §1446(b) this Notice of Removal is being filed within thirty (30) days after receipt by Defendants through service of process, of a copy of the initial pleading setting forth the claims for relief upon which this action or proceeding is based.

5.    A true copy of all process, pleadings, and orders served upon these defendants is attached hereto as Exhibit "A".

## THERE IS COMPLETE DIVERSITY OF CITIZENSHIP
## AMONG THE PROPER PARTIES

6.    Diversity of citizenship exists among the proper parties in this case (namely the plaintiffs and Transamerica), and accordingly, pursuant to 28 U.S.C. § 1332 and 28 U.S.C. § 1446, as amended, this case is removed to this Court.

7.    In the complaint, it is alleged that Wayne Russell resides in Montgomery County, Alabama. (Complaint ¶ 1, Ex. A). It is further alleged that Ronald W. Russell, trustee for the Russell Family Trust, also resides in Montgomery County, Alabama. (Complaint ¶ 2, Ex. A). For the purposes of diversity jurisdiction, the citizenship of a trust is determined by the citizenship of the trustee or trustees. *Goldstick v. ICM Realty*, 788 F.2d 456, 458 (7th Cir. 1986). Consequently,

refer to only Wayne Russell as the "plaintiff" in this case.

for diversity purposes the Russell Family Trust is to be considered a resident of the State of Alabama and all plaintiffs are citizens of the State of Alabama.

8.      Defendant, Augustus Kirby Clements, III, is an individual over the age of nineteen (19), residing in Alabama and is a citizen of the State of Alabama but he is fraudulently joined in this action and does not join in this Notice of Removal. Although the Eleventh Circuit employs the "unanimity rule," which requires that all defendants consent to removal, it is not necessary that a fraudulently or improperly joined defendant, such as Clements, join with the other defendants in a petition for removal. *See Clay v. Brown & Williamson Tobacco Corp.*, 77 F.Supp. 2d 1220 (M.D. Ala. 1999). As set forth below, the joinder of Clements in this action will not defeat the Court's diversity jurisdiction because his joinder is fraudulent as that term is defined under Federal law, in that the plaintiff has no colorable claim against Clements who is joined for the sole purpose of defeating diversity jurisdiction.

9.      Defendant, Transamerica is a corporation organized under the laws of the State of Iowa. Transamerica's principal place of business is not in the State of Alabama, but is in the State of Iowa, and it is a citizen of the State of Iowa.

## PROCEDURAL HISTORY AND PLAINTIFF'S SWORN TESTIMONY

10.      The procedural history of this case is unusual and relevant to this action in that this is the second time plaintiff has filed this action. On June 8, 1998, Wayne Russell filed a similar action involving the same allegations and insurance policy in the Circuit Court for Montgomery County, Alabama and styled *Wayne Russell, et.al. v. Transamerica Occidental Life Ins. Co.*, et. al, CV-98-1299 (Montgomery County, Alabama)(hereafter referred to as "*Russell I*"). *Russell I* was filed against Transamerica and Clements making the same fraud allegations as in this case and

involving the same policy.[2]  During the course of litigating *Russell I*, Russell was deposed (Ex. B).

On December 1, 1999 Transamerica filed a Motion to Dismiss plaintiffs' claims in *Russell I* because

the plaintiffs' claims were not yet ripe for adjudication pursuant to *Williamson v. Indianapolis Life*

*Ins. Co.*, 741 So. 2d 1057 (Ala. 1999), and *Stringfellow v. State Farm Life Ins. Co.*,743 So.2d 439

(Ala. 1999); see also *Underwood v. Life Ins. Co. of Georgia*, 14 F.Supp. 2d 1266 (N.D. Ala. 1998).[3]

On December 20, 1999 plaintiffs filed a Response to Defendants' Motion to Dismiss wherein

"Plaintiffs agree to dismiss all claims in the above referenced case regarding the .... Two Million

Five Hundred Thousand dollar ($2,500,000) Transamerica [policy] without prejudice based upon

*Stringfellow v. State Farm Life Ins. Co.*,[743 So.2d 439 (Ala. 1999)]." (Ex. C).  On December 22,

1999 the trial court dismissed *Russell I* without prejudice pursuant to the Alabama Supreme Court's

ruling in *Stringfellow v. State Farm Life Ins. Co.*,743 So.2d 439 (Ala. 1999)(Ex. D).  Thus, in this

case the Court has the benefit of Wayne Russell's sworn testimony to clarify his claims beyond the

vagaries of the complaint.  In addressing the issue of fraudulent joinder, the district court can

consider any submitted affidavits and/or deposition transcripts.  *Cabalceta v. Standard Fruit Co.*,

883 F.2d 1553,1561 (11th Cir. 1989).  In fact, courts have held that "[a]lthough the fraudulent

joinder standard is not the same as the summary judgment standard, it is a summary-judgment-like

process. Accordingly, the court finds it appropriate to apply the rules governing sworn affidavit and

deposition testimony in the context of motions for summary judgment." *TKI, Inc.  v.  Nicholls*

*Research Corp.*, 191 F.Supp.2d 1307, 1314 (M.D. Ala. 2002), citing *Crowe v. Coleman*, 113 F.3d

---

[2]In *Russell I*, plaintiff also named Jeff Caddell as a defendant but has not named Caddell as a defendant in this case.  Plaintiff also included claims involving two other policies in *Russell I* which are not at issue in this action.

[3] On December 10, 1999, Transamerica filed a Motion for Summary Judgment seeking, among other things, to have *Russell I* dismissed on the same grounds.

1536, 1538 (11th Cir. 1997). As shown below, many of the allegations in the complaint were directly contradicted by Wayne Russell's sworn deposition testimony in *Russell I*. The plaintiff's sworn testimony controls the allegations at issue as opposed to the allegations in the complaint which were written by plaintiff's counsel and do not constitute sworn testimony.

11.     Wayne Russell is a graduate of Auburn University and is an extremely successful business man (Russell depo. pp. 8-9, Ex. B).[4] As a result of his success, Russell has also obtained sophisticated investment and commercial experience and considers himself an astute business man (Russell depo. pp. 20-21, Ex. B).[5] Moreover, as a result of his extensive business and investment experience, plaintiff understands financial markets and the fluctuations of interest rates (Russell depo. pp. 175-184, Ex. B). Due to his multi-million dollar holdings, plaintiff used sophisticated estate planning and long ago retained an estate lawyer and accounting firm to establish the Russell Insurance Trust (Russell depo. pp. 13, 21, Ex. B). In August 1987 Russell created the Russell Insurance Trust in order to transfer as much money as possible to his family while he was living (Russell depo. p. 21, Ex. B; Ex. E, ¶ 16 of Application).[6] This was not the first trust that Russell had created as he had also formed a $2 million charitable trust (Russell depo. pp. 23-24, Ex. B).

---

[4] Russell is in the service station business where he has grown from two stores to more than 30 with over 300 employees with approximately $40 million in gross sales (Russell depo. pp 8, 10-14, Ex. B).

[5] For example, Russell has purchased stocks over the years which at the time of his deposition were valued at between $5 and $10 million and he owns commercial and private real estate "too numerous to name" but valued between $30 and $50 million (Russell depo. pp. 18-20, Ex. B).

[6] The complaint in *Russell I*, Wayne Russell's testimony and the policy application all stated that the owner and beneficiary for the policy at issue was the Russell Insurance Trust with George Russell acting as trustee (Ex. E, Application ¶ 15 and 16). In this case, plaintiff alleges the policy at issue is "included in the Russell Family Trust with Ronald W. Russell as Trustee." (Complaint ¶ 10, Ex. A).

12.     Likewise, Russell has extensive experience with purchasing large life insurance policies. He has $7.5 million in coverage with Phoenix Mutual Life Insurance Company ("Phoenix Mutual"), $8 million in coverage with Transamerica, $2 million with American General and $2 million with New England Life Insurance Company (Russell depo. p. 36, Ex. B). Russell also purchased the Phoenix Mutual insurance and the New England policies from Clements (Russell depo. p. 39, Ex. B).

13.     In fact, before the transaction at issue in this case, Russell had already had legal experience with Phoenix Mutual. In 1988 Russell's lawyers and accountants advised him to purchase a "last to die" insurance policy as part of his estate planning (Russell depo. p. 187, Ex. B). Russell purchased a policy from Clements issued by Phoenix Mutual which he understood required him to make ten annual premium payments (Russell depo. p. 188, Ex. B). Russell later received a class action notice and elected to contest his claim through Alternative Dispute Resolution (Russell depo. pp. 188-189, Ex. B). In that instance, during the application process Russell had asked Clements to provide him with a written statement that the premiums would only be payable for 10 years (Russell depo. p. 194-195, Ex. B). The plaintiff's dispute with Phoenix Mutual occurred before he purchased the Transamerica policies (Russell depo. p. 224-227, Ex. B).

14.     Contrary to the allegations in the complaint which allege that Clements was an agent of Transamerica, Wayne Russell testified that Clements was an independent agent and, in fact, had sold Russell six New England life insurance polices prior to the transaction at issue in this case (Complaint ¶ 12; Russell depo. pp. 38, 41, Ex. B). As a result, Russell understood that Clements was an independent agent and that he represented Russell's interest and not that of Transamerica (Russell depo. p. 60, Ex. B).

6

15.    In *Russell I*, Wayne Russell alleged that he had contacted Clements regarding changes to Russell's estate planning which would require some of the New England policies to be "cashed out" and new policies to be purchased.  Russell testified that when he purchased the $2.5 million Estate Planning Policy, he wanted his children to pay $23,047 in annual premiums for the next 10 years after which "the policy is going to fund itself." (Russell depo. pp. 112-113, 134-135, Ex. B). In November 1994, Clements provided Russell with an illustration for a $1 million policy with an annual premium of $9,219 for 10 years (Russell depo. p. 114, Ex. B).  During that meeting, Russell was aware that illustrated values were "assumed" (Russell depo. pp. 115-117, Ex. B).  Russell also admitted that he understood that the guaranteed rate was the "worse case scenario" but that the current rate being paid by Transamerica at that time was more than the guaranteed rate (Russell depo. p. 145-146, Ex. B).

16.    Russell subsequently received the $2.5 million  policy along with a Cost & Benefit Statement  (Russell depo. pp. 123-124, Ex. B; Ex. E; Ex F). The Cost & Benefit Statement showed that premiums of $23,047 would be due under the guaranteed factors for 20 years (Ex. F).  Likewise, the Table of Policy Values and Benefits contained within the policy itself showed that under the guaranteed factors, premiums could be owed for at least 20 years (Ex. F).  Thus, it was disclosed to Russell that under the guaranteed factors, premiums could be due and owing for as long as 20 years, not ten (10) years as he alleges.

17.    These documents have been in the Russell's possession since they were delivered to him in 1994 (Russell depo. p. 124, Ex. B).  Russell testified that he chose to never read the policy or the  Cost & Benefit Statements (Russell depo. p. 124, Ex. B).  Russell also conceded that he had received annual Statements of Policy Value ("Annual Statement") on the policy at issue but he likewise disregarded those statements (Russell depo. p. 131, Ex. B).  Despite his business acumen,

Russell never attempted to read his policy until after he received notice of a class action lawsuit involving Transamerica (Russell depo. p.,137, Ex. B).

18.    Although Russell claimed to have never read the policy before, during his deposition he demonstrated his ability to review the Table of Policy Values and Benefits and understand its meaning (Russell depo. pp. 238-241, Ex. B).  In fact, Russell admitted that based upon the guaranteed policy values contained in the $2.5 million policy, it was possible that he would have to make a premium payment beyond 10 years (Russell depo. pp. 241-242, Ex. B).

19.    Although the Complaint in this case alleges that Clements told Russell "that he would only pay a premiums for ten (10) years on the policy and thereafter the policy would sustain itself", Russell unmistakenly testified that Clements made no such representations:

> Q.    Now, on the $2.5 million policy that was sold about the same time as the $5 million policy, and that's the one for ten years no more pay, what specifically did Mr. Clements tell you regarding that policy?
>
> A.    **I don't remember.**
>
> Q.    Do you remember what your instructions were on that policy?
>
> A.    Yeah.
>
> Q.    And what were your instructions?
>
> A.    Ten pay only.
>
> Q.    Did you also tell him to be very, very conservative?
>
> A.    I did.
>
> Q.    Do you remember any words that he [Clements] spoke to you regarding the $2.5 million policy?
>
> A.    **I don't recall.**

(Russell depo.  pp.  215-16, Ex. B)(emphasis added).

20.    Despite the fact that Russell could not recall anything Clements had said regarding the policy at issue nor did Russell make any inquiries to Transamerica, Russell testified that he filed *Russell I* because he believed he would have to pay premiums for more than 10 years based on what his lawyers had told him (Russell depo.232-33, Ex. B).

21.    At the time plaintiff filed *Russell I*, the ten year period for which he was to pay the premium on the policy at issue had not expired. On December 1, 1999, Transamerica filed a Motion to Dismiss relying on the Alabama Supreme Court's decision in *Stringfellow v. State Farm Life Ins. Co.*, 743 So.2d 439 (Ala. 1999), that Russell's claims as to the $2.5 million policy were not yet ripe because the ten year pay period was not due to expire until December 2004. In his response to Transamerica's Motion to Dismiss, Plaintiff conceded that his claims were not yet ripe and were due to be dismissed without prejudice (Ex. C). On December 22, 1999, the trial court entered an order dismissing Russell's claims without prejudice on the grounds that such claims were not yet ripe for adjudication (Ex. D).

22.    Plaintiff filed this action (hereafter "*Russell II*") on August 29, 2005. In the complaint, plaintiff alleges that with respect to the $2.5 million policy purchased in December 1994, premiums have now been paid for ten years and that on December 9, 2004, "Plaintiff was required to and did pay the eleventh premium on policy number 92492224." (Complaint ¶ 11, Ex. A). Thus, in this case, plaintiff alleges that his claims with respect to the $2.5 million policy are now ripe for adjudication because the eleventh premium was paid.

23.    However, no eleventh premium payment was required to keep the policy in force. Rather, the eleventh premium was ostensibly made to enable Russell to bring this action. The only requirement that a specific number of premium payments be made is contained in the policy itself, which Wayne Russell has had in his possession since 1994, requiring that premiums be paid for

9

"policy years 1-5: $23,047.00" (Ex. E, p. 1 and 2). The policy also provided with respect to the payment of premiums:

> If you stop paying premiums after the required premium period, your coverage will continue until the accumulation value minus any existing loan is insufficient to pay the monthly deduction. At that time, your policy will enter the grace period. ...

(Ex. E, p. 6).

24.    In this case, Transamerica received an eleventh premium payment which was credited on December 13, 2004 (Affidavit of John M. Cox, Ex. G attached). Although an eleventh premium was paid, it was not required in order to keep the policy in force (Ex. G). In fact, under the current factors had no further premiums been paid, the policy would have continued in full force and effect for the next thirty-nine (39) years or until Wayne Russell reached the age of 91 (Ex. G). Under the guaranteed factors (which would include crediting the minimum interest rate of 4% and charging the highest cost of insurance allowed) the policy would have remained in force for the next fifteen (15) years or until Wayne Russell reached the age of 77 (Ex. G). Thus, far from being required to make an eleventh premium payment, Russell's policy would stay in full force and effect for the next 15 to 39 years if the eleventh premium and no further premiums were paid.

## CLEMENTS IS FRAUDULENTLY JOINED AS A DEFENDANT IN THIS ACTION

### A.    Plaintiffs' Claims Against Clements Are Not Ripe for Adjudication.

25.    On August 29, 2005 plaintiff instituted this action in the Circuit Court of Montgomery County, Alabama, against Clements and Transamerica. In the complaint, Wayne Russell seeks to recover against only Clements based upon claims for fraud and fraudulent suppression (Complaint Counts I-III, Ex. A). The plaintiff seeks recovery against Transamerica for alleged negligent training and supervision (Complaint Counts IV-V, Ex. A).

26.    It is well settled that a plaintiff cannot join a resident defendant against whom he has no colorable claim in order to deprive a non-resident defendant of the right to remove the action to federal court. *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 42 S. Ct. 35, 66 L. Ed. 144 (1921); *Cabaleceta v. Standard Fruit Co.*, 667 F.Supp. 833 (S.D.Fla. 1987), affirmed in part, reversed in part, 833 F.2d 1553 (11th Cir. 1989);[7] *Coker v. Amoco Oil Co.*, 709 F.2d 1433 (11th Cir. 1983); *Tedder v. F.M.C. Corp.*, 590 F.2d 115 (5th Cir. 1979). Federal courts have expressly recognized that where a plaintiff fraudulently joins an insurer's agent or employee to defeat diversity jurisdiction, removal is proper. *McFarland v. Utica Fire Ins. Co.*, 814 F.Supp. 518 (S.D.Miss. 1992) (remand was properly denied where facts asserted by plaintiff-insured as basis for alleged liability of resident defendant-agent could not possibly create such liability).

27.    The burden of proving fraudulent joinder rests on a defendant as the removing party. *Coker*, 709 F.2d at 1440; *Stone v. Williams*, 792 F.Supp. 749 (M.D.Ala. 1992); *Charest v. Olin Corp.*, 542 F.Supp. 771 (N.D. Ala. 1982). In *Charest*, the Court set forth the required showing:

> In order to establish that an in-state defendant has been fraudulently joined, the removing party must show either: (a) that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or (b) that there has been outright fraud in the plaintiff's pleading of jurisdiction facts.

*Charest*, 542 F. Supp. at 1440.

### B.    Russell's Claims Against Clements Are Not Yet Ripe for Adjudication.

28.    In this case, there is no possibility that plaintiff can establish a cause of action against the in-state defendant, Clements, because the claims against Clements are not ripe for adjudication.

---

[7]    The district court held that the resident defendant had been fraudulently joined because the complaint failed to state a cause of action against it under the laws of Florida. The Eleventh Circuit agreed. However, the court determined that Costa Rican law, rather than Florida law, governed the question of fraudulent joinder. Accordingly, the Eleventh Circuit remanded the fraudulent joinder issue to the district court for a determination of Costa Rica law.

As shown above, there was no requirement that an eleventh premium be made to keep the policy at issue in force.  The policy itself provided that payments were required only for the first five (5) policy years after which no further premiums were required.  If no premiums were paid, the cost of insurance would be deducted from the accumulation value so long as there was sufficient accumulation value to cover the cost of insurance.  In this case, by December 2004 the policy at issue had an accumulated value of $297,432.  This amount of accumulated value would keep the policy in force for 39 years, or until 2043, based upon the continued crediting of current interest rates if no further premiums were paid.  Even under the guaranteed factors, which would credit the policy's cash value at the lowest allowed interest rate and charge the highest cost of insurance allowed, the policy would remain in force without further premium payments for another 15 years or until 2020. As a result, Russell's claims against Clements are not yet ripe for adjudication under Alabama law. See, *Williamson v. Indianapolis Life Ins. Co.*, 741 So. 2d 1057 (Ala. 1999), and *Stringfellow v. State Farm Life Ins. Co.*,  743 So.2d 439 (Ala.  1999); see also  *Underwood v. Life Ins. Co. of Georgia*, 14 F.Supp. 2d 1266 (N.D. Ala. 1998)(plaintiff cannot create a justiciable issue by relying upon representation of his counsel that he may have to pay additional premiums in future).

29.     The lack of ripeness bars Russell's claims of fraud and suppression against Clements. Specifically, the complaint alleges that Clements told Russell "that he would only pay premiums for ten (10) years out-of-pocket on the policy and thereafter the policy would sustain itself."[8]  Because there was no requirement that an eleventh payment be made in December 2004, the claims against Clements are no more ripe for adjudication today than they were in 1999 when plaintiffs voluntarily consented to the dismissal of these same claims.  Since Russell has not yet been **required** to pay

---

[8] As shown above, this allegation is directly contradicted by Wayne Russell's testimony. Wayne Russell testified he could recall nothing that Clements said about the policy at issue.

more for his policy than he alleges he was promised, he cannot maintain a claim for fraud because his claims are not yet ripe for adjudication. For example, in *Underwood v. Life Ins. Co. of Georgia*, 14 F.Supp. 2d 1266 (N.D. Ala. 1998), the same counsel representing Russell in this case brought a similar claim alleging that Alvin Underwood had purchased a flexible premium policy with a planned premium of $7 per week. *Underwood*, 14 F.Supp.2d at 1267-68. Underwood conceded that at the time he had filed the lawsuit he had not actually ever paid more than $7 per week in premium but he believed that in the future he would be required to pay more in premium based upon what his lawyers had told him. *Underwood*, 14 F.Supp.2d at 1268 n. 4. Underwood sued Life of Georgia alleging fraud and suppression in connection with the sale of the policy. The defendants moved for summary judgment on the grounds that Underwood's claims were not ripe for adjudication because Underwood had never been required to pay more than $7 per week in premium. The District Court for the Northern District of Alabama, Judge Edwin L. Nelson presiding, agreed:

> Mr. Underwood's payment of premiums on the policy is not a concrete injury because, to date, he has received precisely what he paid for and has not paid unnecessary premiums, as interpreted by the Alabama Supreme Court in *Boswell[ v. Liberty National Life Ins. Co.*, 643 So.2d 580 (Ala, 1994)]. Accordingly, the Court finds that Mr. Underwood fails to establish actual legal injury or damage sufficient to maintain any cause of action against the defendants, and summary judgment will be granted on all of Mr. Underwood's claims.

*Underwood*, 14 F.Supp.2d 1273.

30.    Although *Underwood* involved a motion for summary judgment, the same principal applies in determining whether a defendant has been fraudulently joined. *TKI, Inc. v. Nicholls Research Corp.*, 191 F.Supp.2d 1307, 1314 (M.D. Ala. 2002). In other words, where the claims against the non-diverse defendant are not ripe for adjudication, that non-diverse defendant has been fraudulently joined and removal is appropriate. See, *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 324 (5th Cir. 2001)(affirming district court's ruling that non-diverse defendant

fraudulently joined because the claim against that defendant was "not presently justiciable. .."); *Commonwealth Edison Co. v. International Brotherhood of Electrical Workers, Local Union No. 15*, 961 F.Supp. 1154, 1165-68 (N.D. Ill. 1996)(court held that defendant which had not consented to removal had been fraudulently joined because claims against it were not yet ripe for adjudication). Likewise, in this case there was no requirement that an eleventh premium payment be made to keep the policy in force after December 2004. Without the eleventh premium payment or any further premiums being paid, the policy would have remained in force anywhere from 15 to 39 years. Plaintiff conceded in *Russell I* that his claims were not ripe for adjudication until such time as an eleventh premium payment was **required**. Because no such payment was required to keep the policy in force, Russell's claims against Clements are not yet ripe for adjudication, as plaintiffs recognized in *Russell I*, and Clements is fraudulently joined.

### C.    Wayne Russell Testified That Clements Made No Misrepresentations.

31.    Contrary to the allegations in the complaint, Wayne Russell testified under oath that he could recall nothing that Clements said about the policy at issue. Under Alabama law, the plaintiff must present substantial evidence of a misrepresentation in order to maintain a fraud claim:

> In order to succeed on a fraud claim, the Plaintiff must show: (1) that the defendant misrepresented a material fact;, (2) that the defendant made the misrepresentation willfully to deceive, or recklessly without knowledge; (3) that the Plaintiff relied upon the misrepresentation; and (4) that the Plaintiff incurred damage as a proximate consequence.

*Booker v. United American Ins. Co.*, 700 So. 2d 1333, 1338 (Ala. 1997).

32.    A misrepresentation is an essential element of a fraud claim and without a misrepresentation the Plaintiff cannot maintain a fraud claim. *Bryant v. Southern Energy Homes, Inc.*, 682 So. 2d 3 (Ala. 1996); *Keller v. Security Federal Sav. & Loan*, 555 So. 2d 151 (Ala. 1989); *Wilson v. Brown*, 496 So. 2d 756 (Ala. 1986); *Roney v. Ray*, 436 So. 2d 875 (Ala. 1983). In this

14

case, there is no evidence that Clements made any misrepresentation to Russell. To the contrary, Wayne Russell testified that he could recall NOTHING Clements had said relating to the policy at issue in this case. As a result, plaintiff has affirmatively refuted that Clements made any misrepresentation, thus, Clements is fraudulently joined in this action because plaintiff cannot, as a matter of law, maintain a fraud claim against him. See, *Wakeland v. Brown & Williamson Tobacco Corp.*, 996 F.Supp. 1213, 1221 (S.D. Ala. 1998)(local, non-diverse, tobacco distributors held fraudulently joined because plaintiff failed to allege any misrepresentations made by local distributors); *Waters v. State Farm Mutual Auto. Ins. Co.*, 158 F.R.D. 107 (S.D. Tex 1994)(joinder of non-divers insurance agent held fraudulent because plaintiff failed to state cause of action against insurance agent where claims were merely conclusory and failed to specify content of alleged misrepresentation); *Crockett v. Citifinancial, Inc.*, 192 F.Supp.2d 648, 652 (N.D. Miss. 2002)(non-diverse employees of corporate defendant held fraudulently joined where plaintiff testified in deposition that she did not know non-diverse employees and could attribute no misrepresentations made by those defendants); *Burns v. Wyeth, Inc.* 352 F.Supp.2d 773, 775-77 (E.D. Kent. 2004)(non-diverse sales representatives held fraudulently joined because plaintiff could not attribute any specific misrepresentations made by those defendants).

### D.    Plaintiff Cannot Maintain a Claim of Suppression Against Clements.

33.    In the complaint, Russell claims that Clements "failed to disclose to Plaintiff that he would be required to pay premiums for more than ten (10) years out-of-pocket. ..." (Complaint ¶ 27). Under Alabama law, in order to maintain a claim for suppression, Russell must present substantial evidence that: (1) the Clements had a duty to disclose an existing material fact; (2) Clements defendants had actual knowledge of the fact and its materiality; (3) Clements actually suppressed the fact; (4) that Russell's lack of knowledge concerning that fact induced him to act;

15

and (5) Russell suffered actual damages as a result of the suppression. *State Farm Fire And Casualty Co. v. Owen*, 729 So.2d 834 (Ala.1998); *Locklear Dodge City, Inc. v. Kimbrell*, 703 So.2d 303 (Ala. 1997); *Wolff v. Allstate Life Ins. Co.*, 985 F.2d 1524 (11th Cir. 1993); *Simpson v. Sto Corp.*, 951 F. Supp. 202 (M.D. Ala. 1996).

34.     For the reasons stated above with respect to ripeness, an eleventh premium was not required to be paid and, thus, Russell has not been damaged. *Underwood v. Life Ins. Co. of Georgia*, 14 F.Supp. 2d 1266 (N.D. Ala. 1998). Moreover, the facts relating to the required payment of premiums were actually disclosed to Russell. The policy provided to Russell disclosed that premiums were only required to be paid for the first five (5) policy years. Thereafter, if no further premiums were paid the policy would stay in force so long as the accumulated value was sufficient to pay the cost of insurance. The policy as well as the Cost & Benefit Statement also showed that under the guaranteed values, Russell could pay premiums for up to 20 years. Russell also received annual reports each year the policy was in force but he never read them and he never read the policy. These documents were notice to Russell of the allegedly suppressed facts as a matter of law even if Russell never bothered to read the documents. *Gray v. Liberty National Life Insurance Company*, 623 So. 2d 1156, 1159 (Ala. 1993); *See also Countryside Roofing v. Mutual Benefit Life Insurance Company*, 587 So. 2d 987, 992 (Ala. 1991) (receipt of notice which advised insured of effect of replacing policy held not to constitute suppression).

35.     In Alabama, a person is charged with the knowledge of the contents of contracts into which he enters. *Green Tree Financial Corporation v. Lewis*, 813 So.2d 820 (Ala. 2001); *Banks v. SCI Alabama Funeral Services*, 801 So.2d 20 (Ala. 2001); *Mitchell Nissan, Inc. v. Foster*, 775 So.2d 138 (Ala. 2000); *see also, Vann v. First Community Credit Corp.*, 834 So.2d 751 (Ala. 2002)(plaintiffs' lack of education did not relieve them of their contractual obligations); *Locklear*

16

*Dodge City, Inc. v. Kimbrell*, 703 So.2d 303 (Ala. 1997). The Alabama Supreme Court in *Locklear* held that a person is bound by the terms of a contract to which he is a party even if he neglect to read the terms of the policy. To hold otherwise, the Court stated was "to perverse a result to contemplate." *Locklear*, 703 So.2d at 306.

36. If the defendant has disclosed the allegedly suppressed fact to the plaintiff in writing, the plaintiff cannot maintain a claim for suppression. Absent a failure to disclose the fact allegedly suppressed, no action for fraud will lie. *Locklear Dodge City, Inc. v. Kimbrell*, 741 So.2d 394 (Ala. 1999)(Where plaintiff signed / received a disclosure statement, defendant did not wrongfully conceal or fail to disclose any material facts as a matter of law); *Walker v. Transouth Financial Corp.*, 1996 WL 406836 (M.D. Ala. 1996)(Defendant entitled to summary judgment where plaintiff given written disclosures of facts allegedly suppressed); *Williams v. Norwest Financial Alabama, Inc.*, 723 So.2d 97 (Ala. Civ. App. 1998)(no fraudulent suppression as matter of law where college graduate plaintiffs would have discovered alleged fraud had they read loan documents); *Garner v. JMIC Life Ins. Co., Inc.*, 693 So.2d 478 (Ala. Civ. App. 1997)(Summary Judgment upheld on suppression claims where plaintiff received and signed documents disclosing purchase of credit life insurance and warranty which were allegedly suppressed); *Wilson v. First National Bank of Georgia*, 716 So.2d 722, 727 (Ala. Civ. App. 1998)(court affirmed the trial court's Rule 12(b)(6) dismissal of plaintiff's misrepresentation and suppression claims because written documents provided to plaintiff directly contradicted alleged misrepresentation and actually disclosed the facts allegedly suppressed). In this case, the facts allegedly suppressed were fully disclosed to the plaintiff.

**E.    Wayne Russell Could Not Have Reasonably Relied Upon any Alleged Misrepresentations Made by Clements.**

37.    Although Wayne Russell testified that he could recall nothing that Clements said with regard to the policy at issue in this case, the complaint alleges that Clements "told Plaintiff that he would only pay premiums for ten (10) years out-of-pocket on the policy and thereafter the policy would sustain itself." (Complaint ¶ 8, Ex. A). Even were the Court to consider that Clements made such a statement, Russell could not have reasonably relied upon such a statement as a matter of law. A similar situation was presented in the Middle District to Judge Fuller in *Owens v. Life Ins. Co. Of Georgia*, 289 F.Supp.2d 1319 (M.D. Ala. 2003). In *Owens*, the insured brought a state court suit against a non-resident life insurer and resident insurance agent, alleging breach of contract and fraud arising from the failure of the insured's premiums to vanish, as allegedly promised, after he turned 62-years old. Additionally plaintiff Owens alleged, at the time of purchase, June 21, 1984, the agent represented to him that: (1) the Policy would be a "paid up policy" upon Plaintiff's reaching age sixty-two, (2) the amount of insurance coverage would never fall below the face amount of $15,000.00, and (3) the "build up in values" of the Policy would pay for any additional insurance charges after Plaintiff reached age sixty-two. *Owens*, 289 F.Supp.2d at 1321. On August 31, 2002, plaintiff Owens reached the age of sixty-two and alleged that he had then learned that the policy would not perform as his agent had represented. *Id.* at 1321. Consequently, Owens filed suit and on August 21, 2003. *Id.* Defendant Life of Georgia removed the action to the District Court of the Middle District of Alabama arguing that the agent had been fraudulently joined as plaintiff's fraud claims against the agent were time barred by the applicable statute of limitations. *Id.* at 1321-23.

38.    The court agreed that the agent had been fraudulently joined because under Alabama law plaintiff's claims were time barred in that plaintiff had been in possession of documents which

would have put a reasonable person on notice of the alleged misrepresentations. *Id.* at 1326. The

court found that not only were the documents provided to the plaintiff in *Owens* contradictory to the

alleged misrepresentations but that his reliance on those misrepresentations was not reasonable as

a matter of law:

> In the instant case, the plaintiff had in his possession documents which
> contradicted the alleged oral misrepresentations made by Adams [the non-diverse
> agent] and provided the information allegedly suppressed. Specifically, the policy
> provides that "premiums [are] payable for the number of years shown," with the
> number of years shown being "57." Hence, since plaintiff purchased the policy when
> he was 43 years old, the policy would not be "paid up" when plaintiff turned 62 years
> old, but when he turned 100 years old. Even if this provision was not fully disclosed
> or explained to plaintiff, he should been on notice of the pertinent terms of the policy
> when he received it in 1984. As a result, plaintiff's reliance on Adam's alleged
> representations to the contrary, or his reliance on facts allegedly suppressed by
> Adams, after he received the policy, was not reasonable.

*Owens*, 289 F.Supp.2d at 1326.

39.    When a plaintiff alleges misrepresentations against a non-diverse defendant, courts

have consistently held that if the plaintiff could not have reasonably relied upon the alleged

misrepresentation, the non-diverse defendant is fraudulently joined. For example, in *Jabour v. Life

Insurance Company of North America*, 362 F.Supp.2d 736 (S.D. Miss. 2005), the plaintiff sued his

insurer and its local agent, Harvel, alleging that the agent had misrepresented that plaintiff's

preexisting neurological illness would be covered under a disability policy he had purchased. The

plaintiff later made a claim for benefits which was denied because the illness had been preexisting.

Plaintiff sued the insurer and its local agent alleging, inter alia, fraud. The insurer removed the case

arguing that the local agent had been fraudulently joined because the policy provided to the plaintiff,

who was also a lawyer, specifically stated that pre-existing illnesses were excluded from coverage.

40.    The court agreed and held that the local agent had been fraudulently joined because

the plaintiff could not have justifiably relied upon the alleged misrepresentations of the local agent[9]:

> Turning to the facts of the present case, the 1987 policy encourages Jabour, an attorney, to read the entire policy carefully. ... On page six of the policy, it defines the term "sickness" as any "sickness" or disease which first manifest itself after the date of issue and while your policy is in force." Moreover, attached to the policy is a modification that states "THE INSURED IS NOT COVERED FOR ANY LOSS RESULTING FROM AND RESIDUALS OR PROGRESSION OF NEUROLOGICAL DISEASE." Even if Harvel did make a representation to Jabour that his preexisting condition would be covered by the policy, Jabour was not justified in relying on any representation inasmuch as the policy's language informed Jabour that his preexisting condition was excluded from the policy's coverage. Jabour cannot establish a claim of misrepresentation against Harvel.

*Jabour*, 362 F.Supp.2d at 742; see also *Ross v. Citifinancial, Inc.*, 344 F.3d 458 (5th Cir.

2003)(affirming district court's refusal to remand based upon fraudulent joined because plaintiff

could not show justifiable reliance on alleged misrepresentation of non-diverse defendant); *Morris*

*v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2000)(affirming denial of motion to remand

based upon fraudulent joinder because plaintiff could not have reasonably relied upon non-diverse

defendant's alleged misrepresentation).

41.    Likewise in this case, Russell could not have reasonably relied upon clement's alleged

misrepresentations.  Under Alabama law, in order to prevail on his fraud claim, a plaintiff must

present substantial evidence of the following: "[t]here must be (1) a false representation (2)

concerning a material existing fact (3) relied upon by the plaintiff (4) who must be damaged as a

proximate result." *Bank of Red Bay v. King*, 482 So. 2d 274, 281 (Ala. 1985), quoting *International*

*Resorts, Inc. v. Lambert*, 350 So. 2d 391 (Ala. 1977).

---

[9] In this case, the standard of reasonable reliance, not justifiable reliance, applies. *Foremost Ins. Co. v. Parham,* 693 So. 2d 409, 418 (Ala. 1997).

42.    Until 1989 the plaintiff's reliance in a fraud case must have been shown to have been reasonable. *Torres v. State Farm Ins. Co.,* 438 So.2d 757 (Ala. 1983). However, in its decision in *Hickox v. Stover,* 551 So. 2d 259 (Ala. 1989) the Alabama Supreme Court overruled *Torres* and instituted a standard of "justifiable reliance" which "basically eliminated a person's duty to read and to attempt to understand the contents of a document or documents received in connection with a particular transaction." *Foremost Ins. Co. v. Parham,* 693 So. 2d 409, 418 (Ala. 1997).

43.    After nine years of applying the "justifiable reliance" standard, the Court recognized that such had been a mistake because it encouraged people to ignore the terms of their contracts. On March 14, 1997 the Alabama Supreme Court in *Foremost* overruled *Hickox v. Stover,* 551 So. 2d 259 (Ala. 1989), and re-affirmed its decision in *Torres v. State Farm Ins. Co.,* 438 So. 2d 757 (Ala. 1983), holding that a reasonable reliance standard would be applied to all cases filed after March 14, 1997. *Foremost,* 693 So. 2d at 421.

In *Torres* the Court held that in a fraud case, the plaintiff's reliance on an alleged misrepresentation must have been reasonable:

> Because it is the policy of courts not only to discourage fraud but also to discourage negligence and inattention to one's own interest, the right of reliance comes with a concomitant duty on the part of the plaintiff to exercise some measure of precaution to safeguard their interest. In order to recover for misrepresentation, the plaintiff's reliance must, therefore, have been reasonable under the circumstances. If the circumstances are such that a reasonably prudent person who exercised ordinary care would have discovered the true fact, the plaintiff should not recover.

*Torres,* 438 So. 2d at 759.

In *Woodlawn Fraternal Lodge No. 525, F & A.M. v. Commercial Union Ins. Co.,* 510 So. 2d 162 (Ala. 1987) the Court further explained its decision in *Torres:*

> *Torres* deals with a situation where the parties have initially entered into a contract. It says in effect that the policy of the law is that it is unreasonable to rely on oral statements when one is in possession of written documents that would put one on notice as to the validity of oral statements. By the same token, the written documents put the party to whom oral representations were made in a position to

21

discover the falsity of those representations, thereby putting him on notice as a matter of law that a fraud may have been committed.

*Woodlawn*, 510 So. 2d at 164.

In this case, the plaintiff was in possession of documents which clearly stated when the premiums would be payable under the guaranteed and current factors. The plaintiff could not have reasonably relied upon any alleged oral statement that the $2.5 million policy was guaranteed to be self-funded after 10 years.

44.    Russell attempts to escape any responsibility in this case by claiming that he never bothered to read the policy or any other documents.  Under *Torres*, an insured has a **duty** to read the policy and 'exercise some measure of precautions." The plaintiff cannot as a matter of law reasonably rely upon an alleged oral representation that the policy contained benefits which it in fact did not provide.  See, e.g., *Cherokee Farms v. Fireman's Fund* Ins., 526 So. 2d 871 (Ala. 1988); *Lowe v. East Alabama Funeral Ins. Co.*, 472 So. 2d 1090 (Ala. Civ. App. 1985).

45.    In this case, the Illustrations, Cost & Benefit Statement and policy informed the plaintiff numerous times of the interest rates and when the premiums would be payable under the guaranteed and current factors.  If the plaintiff, as the president of a large oil business and a college graduate, had merely read the documents he had received, he would have known the facts which he now claims were misrepresented or suppressed.  For example, the policy and Cost & Benefit Statement both disclosed that under the guaranteed factors, premiums could be due for up to 20 years. Russell simply refused to read the documents when he received them in 1994. Consequently, the plaintiff cannot, as a matter of law, have reasonably relied upon the alleged oral misrepresentations.

## THE JURISDICTIONAL AMOUNT IN CONTROVERSY IS MET

46.     The amount in controversy in this action exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.  Plaintiff seeks a trial by jury to recover compensatory damages, **including premiums**, mental anguish, emotional distress and "judgment against Defendants in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, and his costs."(*Russell II* Complaint ¶¶ 25, 33, 36, 39 and 42, Ex. A).

47.     In this case, the amount in controversy clearly exceeds $75,000.  The face amount of the Transamerica policy at issue is $2.5 million and the premiums paid exceeded $230,000.  Thus, the compensatory damages alone exceed the jurisdictional amount.

48.     Although plaintiff has made no claim for damages in a specific amount in the complaint, such artful pleading will not prevent removal. This case involves alleged fraud, suppression and negligent training and supervision regarding the sale of life insurance.  All counts of the plaintiffs' complaint seek an unspecified amount of compensatory and punitive damages. Considering plaintiffs' claims for punitive damages for fraud, suppression and wanton training and supervision, the requisite amount in controversy of $75,000.00 is clearly satisfied.

49.     In addition, plaintiff does not attempt to limit the amount of his total claims for damages. Facing a similar situation, the court in *Steele v. Underwriters Adjusting Co.*, 649 F.Supp. 1414 (M.D.Ala. 1986), was confronted with the removal of a state court complaint seeking unspecified punitive damages and demanding "judgment against the defendants in the [sic] amount to be fairly ascertained by the jury." *Id*. at 1415. The *Steele* court rejected plaintiff's belated argument that the amount in controversy was less than $50,000 [$75,000], recognizing in such cases that a court "may turn to the petition for removal to ascertain the amount in controversy." Id. at 1416. The Court's reasoning in *Steele* is equally applicable here:

23

To allow [a plaintiff to avoid federal jurisdiction by claiming unspecified damages] would violate this court's notions of procedural fair play.  A plaintiff **should not be allowed to deprive a defendant of his right to remove through artful pleading practices...** (emphasis added).

The plaintiff should not be allowed to rob Underwriters of its right to remove by demanding such damages as may be "fairly ascertained by the jury."  Permitting such practice allows the Plaintiff to "have his cake and eat it too."  In other words, the Plaintiff effectively prevents federal jurisdiction by failing to demand a specific monetary figure, while making it possible for the jury to return a verdict well in excess of [the statutory amount.]  Such an approach is simply unfair and will not be permitted by this court.

Id. at 1415-16.

Likewise, the United States District Court for the Northern District of Alabama reviewed the propriety of removal of an action which did not contain a specific *ad damnum* in the complaint in *Kilpatrick v. Evy Construction Co., Inc.*, 708 F.Supp. 1241 (N.D. Ala. 1989).  The Court found that a complaint not seeking a sum specific would yield to allegations of jurisdictional limit in the Notice of Removal.  Id. at 1242-43.  See also *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1358 (11th Cir. 1996)(overruled on other grounds *Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1074 (11th Cir 2000))[10].

50.    In *Tapscott* the Eleventh Circuit held that when the Plaintiffs' demand is unspecified, like here, **a lower burden of proof to establish removal jurisdiction is warranted.**  *Id.* at 1357 (emphasis added):

> Where, as here, there is an unspecified claim for damages, however, a removing defendant need not meet the strict "legal certainty" standard articulated above.  Instead, a removing defendant need only show "by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement."

---

[10] In *Cohen*, the Eleventh Circuit Court of Appeals overruled that portion of *Tapscott* allowing the aggregation of punitive damages in a class action.  The *Cohen* ruling did not affect that portion of *Tapscott* relating to the removing defendant's burden of proof as to unspecified damages.

*Lowe's OK'D Used Cars, Inc. v. Acceptance Ins. Co.*, 995 F.Supp. 1388 (M.D.Ala. 1998) (quoting *Tapscott*, 77 F.3d at 1357). Here, the preponderance of the evidence establishes that the jurisdictional requirement is satisfied.

51.    Historically in Alabama, fraud claims such as those asserted in the Complaint, where plaintiff has prevailed, have routinely resulted in verdicts exceeding the $75,000 jurisdictional requirement. In fact, Yale law professor George Priest, one of the nation's foremost experts on punitive damages, offered an analysis in a relatively recent case of Alabama jury verdicts consisting of punitive damages against out-of-state insurance companies and concluded that "even after *BMW v. Gore*, the average punitive damage award affirmed by the Alabama Supreme Court [was] $874,667." *Davis v. Franklin Life Ins. Co.*, 71 F.Supp.2d 1197, 1199 (M.D. Ala. 1999). Thus, this Court should take judicial notice that based on the nature of the claims asserted and the relief sought, the amount in controversy is satisfied.

52.    To aid the court in determining whether the requisite amount in controversy has been satisfied, "the court should look for guidance to decisions rendered in cases of the same type of suit." *Boling v. Union Nat. Life Ins. Co.*, 900 F.Supp. 400, 404 (M.D.Ala. 1995), citing, *Steel v. Underwriters Adjusting Co., Inc.*, 649 F.Supp. 1414 (M.D.Ala. 1986). A cursory review of the recent reported decisions involving jury awards in fraud cases substantiates taking judicial notice that the amount in controversy exceeds the jurisdictional requirement.[11]

---

[11] *See* Foremost Insurance Company v. Parham, 693 So.2d 409 (Ala. 1997) (This was a case brought by two separate Plaintiffs concerning whether they had been provided coverage for "other structures" under their homeowners policy. Initially, each plaintiff received a punitive damage award of $7,500,000.00 based on alleged misrepresentations and/or suppressions. The trial court subsequently reduced these two punitive damage verdicts to $3,250.000.00 each, based on economic damages of $1,868.30 and $1,429.43 respectively. On appeal, the Supreme Court reduced the punitive damage awards to $175,000.00 and $173,000.00 respectively. Even after significant remittitur, the jury award in this fraud case far exceeds the jurisdictional requirement); First Commercial Bank v. Spivey, 694 So.2d 1316 (Ala. 1997)(This is another fraud case concerning a bank's alleged fraudulent dispersal of a construction loan proceeds to creditors of the borrower. A jury verdict was returned of $500.000.00 in compensatory damages, principally comprised

Faced with similar ad damnum language in other cases, federal courts have routinely taken judicial notice of the large punitive damages verdicts in Alabama and sustained removal over a plaintiff's argument that the amount in controversy is insufficient. See e.g., *Dennis v. CSX Transportation, Inc.*, CV 92-A-670-N (M.D. Ala. July 2, 1992); *Jones v. Ford Motor Credit Co.*, CV 92-A-1099 N (M.D. Ala. Nov. 19, 1992); *Steele v. Underwriters Adjusting Co.*, 649 F. Supp. 1414 (M.D. Ala. 1986).

In *Boling v. Union Nat'l Life Ins. Co.*, 900 F. Supp. 400, 405 (M.D. Ala. 1995), Judge Albritton summed up the situation:

> It is clear that in Alabama, when a plaintiff seeks recovery for fraud against an insurance company and asks for punitive damages, the recovery, if plaintiff prevails, may very well exceed $50,000. [$75,000.00].

---

of mental anguish, and $500,000.00 in punitive damages based on alleged misrepresentations and suppressions. This verdict was upheld by the Alabama Supreme Court); Hillcrest Center, Inc. v. Rone, 711 So.2d 901 (Ala. 1997) (Based on claims of misrepresentation with regard to the adequacy of parking, a jury awarded $47,000.00 in compensatory damages and an additional $200,000.00 in punitive damages. The trial court subsequently reduced the punitive damage award to $130,000.00. On appeal, after noting that the reduced punitive damages still constituted approximately 60% of the net worth of the defendant, the Court further reduced the award to $94,000.00); Union Security v. Crocker, 709 So.2d 1118 (Ala. 1997) (This fraud action concerns misrepresentations which could have resulted in void insurance coverage. The jury awarded $5,000,000.00 in punitive damages based on these misrepresentations and fraud claims. The trial court reduced the verdict to $2,000,000.00. This award was affirmed by the Alabama Supreme Court but later remanded for a consideration light of the BMW v. Gore case by the United States Supreme Court. On remand, the Alabama Supreme Court reduced the verdict to $1,000,000.00); Life Insurance Company of Georgia v. Johnson, 701 So.2d 524 (Ala. 1997). (This fraud action concerned misrepresentations and suppressions involving the sale of medicare supplement policy to a medicaid recipient. In other words, the alleged sale of a policy which had no value to the plaintiff. The jury returned a verdict of $250,000.00 in compensatory damages (again principally mental anguish) and $15,000,000.00 in punitive damages, which the trial court remitted to $12,500,000.00. The Alabama Supreme Court further remitted the punitive damage award to $5,000,000.00. On remand from the United States Supreme Court, the punitive damages was further reduced to $3,000,000.0). Life Insurance Company of Georgia v. Parker, 726 So.2d 618 (Ala. 1998) (Here, an insured sued the insurer for fraud in connection with the replacement of various policies with a new graded death benefit policy. The jury awarded $4,276.00 in compensatory damages and $200,000.00 in punitive damages. This punitive damages award was reduced to $150,000.00); Liberty National Life Insurance Company v. White, 1999 WL378495 (Ala. Civ. App. 1999) (In this case, the insured brought a misrepresentation and suppression claim against the insurance company based on misrepresentations made at the time of the sale of the subject life insurance policy. The jury returned a verdict for $1,350.00 in compensatory damages and $200,000.00 in punitive damages. The trial court remitted the punitive damages to $150,000.00 and the Alabama Court of Civil Appeals affirmed the trial court). In each of the above instances, similar fraud claims have resulted, in verdicts well in excess of the jurisdictional requirement, even after these verdicts were remitted.

53.    In *Jones v. Ford Motor Co.*, CV 92-A-1900-N, decided November 19, 1992, the

Court took judicial notice of the large punitive damage awards so common to Alabama practice:

> The court is entitled to take judicial notice of jury awards in state court
> from which this action was removed. Defendant correctly notes a recent
> case in Lowndes County whereby a plaintiff was awarded in excess of $6
> million in punitive damages and $150,000 in compensatory damages for
> a claim involving fraud by a lender. *Union Mortgage Co. v. Barlow*, 595
> So.2d 1335 (Ala. 1992). Defendant further cites several other Alabama
> case involving fraud charges, whose jury verdicts greatly exceed $50,000.

Thus, in the case at bar, this Court should take judicial notice that Plaintiffs' claims for fraud,

suppression, and negligent/wanton training and supervision clearly satisfy the requisite amount in

controversy.

### THE PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN MET

54.    Defendants have filed no pleadings or papers in this action in the state court. The

time Defendants are required to answer or plead in response to the Complaint has not expired.

55.    This action is being removed pursuant to 28 U.S.C. §1446(a) and (b), within one year

after the commencement of this action.

56.    A true and correct copy of this Notice of Removal shall be filed with the Clerk of the

Circuit Court of Montgomery County, Alabama, in accordance with 28 U.S.C. §1446(d).

57.    As set forth above, diversity of citizenship exists between all proper parties in this

case, and pursuant to 28 U.S.C. §§1332, 1441 and 1446, as amended, this case is removed to this

Court.

Charles D. Stewart (ASB 0303–S77E)
Steve R.  Burford (ASB 6886–B40S)
Attorneys for Transamerica Occidental Life
Insurance Company

27

**OF COUNSEL:**

**SPAIN & GILLON, L.L.C.**
The Zinszer Building
2117 Second Avenue, North
Birmingham, AL 35203
Ph:      (205) 328–4100
Fax:    (205) 324–8866

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been served upon all counsel of record by:

( ) hand delivery;
( ) facsimile transmission;
( ) express mail;
(✓) U.S. mail, first class; or
( ) other

and addressed as follows on **October 11, 2005:**

Joseph H. Aughtman, Esq.
**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36103–4160

George W. Walker, III, Esq.
**COPELAND, FRANCO, SCREWS & GILL, P.A.**
444 South Perry Street
Post Office Box 347
Montgomery, AL 36101-0347

_____
Of Counsel

## INDEX TO EXHIBITS IN SUPPORT OF NOTICE OF REMOVAL

A.  *Wayne Russell, et al. v. Transamerica Occidental Life Ins. Co. and Augustus Kirby Clements, III*, CV-05-1924 (Circuit Court for Montgomery County, Alabama).

B.  Deposition transcript of Wayne Russell in *Russell I*.

C.  Plaintiff's Response to Defendant's Motion to Dismiss in *Russell I*.

D.  December 22, 1999 Order dismissing *Wayne Russell, et al. v. Transamerica Occidental Life Ins. Co. and Augustus Kirby Clements, III, et. al*, CV-98-1299 (Circuit Court for Montgomery County, Alabama)(*Russell I*).

E.  Transamerica Occidental Life Insurance Policy No. 92492224.

F.  Statement of Policy Cost and Benefit Information for Transamerica Occidental Life Insurance Policy No. 92492224.

G.  Affidavit of John M. Cox.