IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

*(Electronically Filed)*

| | | |
|---|---|---|
| WAYNE RUSSELL;<br>RONALD W. RUSSELL, as Trustee for<br>The Russell Family Trust;<br>THE RUSSELL FAMILY TRUST,<br><br>     Plaintiff,<br><br>v.<br><br>TRANSAMERICA OCCIDENTAL<br>LIFE INSURANCE COMPANY;<br>AUGUSTUS KIRBY CLEMENTS, III;<br>and Fictitious Defendants "A", "B" and<br>"C" whether singular or plural, are those<br>other persons, corporations, firms<br>or other entities whose wrongful<br>conduct caused or contributed to cause<br>the injuries and damages to Plaintiff,<br>all of whose true and correct names<br>are unknown to Plaintiff at this time,<br>but will be substituted by Amendment<br>when ascertained,<br><br>     Defendants. | * * * * * * * * * * * * * * * * * * * * * * * | CASE NO.: 2:05-cv-972-ID-VPM |

## PLAINTIFFS' BRIEF IN SUPPORT
## OF MOTION TO REMAND

Plaintiffs hereby move this Court to remand their case back to Montgomery County, Alabama, where it was originally and properly filed. Defendant Transamerica Occidental Life Insurance Company ("Transamerica") has removed this case pursuant to 28 U.S.C. §1446 and bases their Notice of Removal on diversity of citizenship pursuant to 28 U.S.C. §1332. Transamerica claims that the resident Defendant, Augustus Kirby Clements, III, is fraudulently joined.

1

Transamerica is inaccurate in its assertion that Clements is fraudulently joined.

## Introduction

This case involves Plaintiffs' claims that he was sold a $2,500,000.00 life insurance policy by the Defendants and was specifically told he would only have to pay premiums out-of-pocket for ten years to fund the policy. This case is what is referred to frequently as a "vanishing premium" case.

Originally, Plaintiff, Wayne Russell, filed his claims prior to reaching the tenth anniversary of his policy. Based on the law as it exists in Alabama, Plaintiff was forced to dismiss his claims in Montgomery County Circuit Court without prejudice due to the lack of ripeness of his damages. The Plaintiff was continually billed for an annual premium by the Defendants all the way through December 2004. December 2004 was the eleventh anniversary date of Plaintiff's policy. Plaintiff received the eleventh premium notice and paid it as he promptly has for the past eleven years at the request of the Defendants. Subsequently, Plaintiff re-filed his case in the Montgomery County Circuit Court against the Defendants bringing claims involving the $2,500,000.00 policy at issue.

It is important to note that counsel for Transamerica in *Russell I*, is the same counsel for Transamerica currently in *Russell II*. When *Russell I* was originally filed, the same Defendants were named with the addition of the broker involved in the transaction, Jeff Caddell. In *Russell I*, counsel for Transamerica did not choose to remove Plaintiff's case to Federal Court based on fraudulent joinder and diversity jurisdiction. In fact, even after the Plaintiff testified in *Russell I*, counsel for

2

Transamerica still chose not to remove the case to Federal Court for any reason. Now, in *Russell II*, with two of the same parties named as Defendants, Transamerica now has decided to remove the case to this Court based upon fraudulent joinder and diversity jurisdiction. Nothing occurred between *Russell I* and *Russell II* that separates these cases procedurally that would now give Transamerica a legitimate reason to remove the case to this Court. It is a clear attempt by Transamerica to avoid the Montgomery County Circuit Court where this case was properly filed. The fact is, Transamerica is forum shopping. Transamerica obviously liked the state court judge in *Russell I* and does not like the state court judge in *Russell II*.

It is also interesting to note that Defendant Clements, the Alabama resident Defendant, did not choose to join in the removal of this case. It should speak volumes as to the motives of Transamerica by the fact that Defendant Clements did not join in the removal process and clearly did not consider himself fraudulently joined.

The Plaintiffs have not fraudulently joined Defendant Clements because he was the agent for Transamerica who sold Plaintiff the policy and made the misrepresentations on behalf of Transamerica. Therefore, this case should be remanded back to state court where it was originally filed pursuant to 28 U.S.C., §1447.

## Standard of Review

Federal courts are courts of limited jurisdiction, and may only hear cases that they have been authorized to hear by either the Constitution or by the United States Congress. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994); *Burns v. Windsor Ins. Co.,* 31 F. 3d 1092 (1994). The burden of establishing federal jurisdiction

3

is on the party seeking removal, and because removal raises significant federalism concerns, it must be strictly construed with all doubts resolved in favor of remand. *Shamrock Oil & Gas. Corp. v. Sheets*, 313 U.S. 100 (1941); *Diaz v. Sheppard*, 85 F. 3d 1502, 1505 (11th Cir. 1996), *cert. denied,* 520 U.S. 1162, 117 S. Ct. 1349, 137 L. Ed. 2d 506 (1997); *Burns v. Windsor Ins. Co.*, 31 F. 3d at 1095 (*Boyer v. Snap-on Tools Corp.*, 913 F. 2d 108(3rd Cir. 1990)); (*Coker v. Amoco Oil Co.*, 709 F. 2d 1433 (11th Cir. 1983)); *see also Stone v. Williams,* 792 F. Supp. 749 (M.D. Ala. 1992).

As set forth above, the instant case was removed from the Circuit Court of Bullock County, Alabama, on the grounds of fraudulent joinder.   When alleging fraudulent joinder, "[a] defendant must assert with particularity that a joinder is fraudulent and support the claim by **clear and convincing evidence**."  *Everett v. MTD Prods., Inc.*, 947 F. Supp. 441 (N.D. Ala. Nov. 21, 1996) (emphasis added); *see also Parks v. New York Times Company*, 308 F. 2d 474, 478 (5th Cir. 1962) (holding that there can be no fraudulent joinder unless it be clear that there can be no recovery under the law of the state on the cause alleged, or on the facts in view of the law as they exist when the petition to remand is heard).[1]  As stated above, Defendant Ottwiller, as the moving party, "bears the burden of proving that the joinder of the resident defendant was fraudulent."  *Cabalceta v. Standard Fruit Co.,* 883 F. 2d 1553, 1556 (11th Cir. 1989) (citing *Coker v. Amoco Oil Co.*, 709 F. 2d at 1440).   This burden is a heavy one because if a **possibility** exists that a state court could find that the Complaint states a cause of action against Defendant Norfleet, this Court must find that the joinder is proper and remand the case to the state court.  *Coker*, 709 F. 2d at 1440.

---

[1] Fifth Circuit decisions rendered prior to October 1, 1981, are binding authority in this Circuit. *Bonner v. City of Prichard,* 661 F. 2d 1206, 1209 (11th Cir. 1981) (*en banc*)

## Law and Argument

### I.    Fraudulent Misrepresentation, Suppression and Ripeness

In the case at bar, there has been no allegation by the Defendants of "outright fraud" in Plaintiffs' pleading of jurisdictional facts, nor a dispute as to whether Clements is a citizen of Alabama.  To the contrary, Transamerica readily admits that Clements is a resident of Alabama and *de facto* admits that Plaintiffs have not committed outright fraud in pleading jurisdictional facts in their lawsuit.  However, Transamerica has asserted that Clements was fraudulently joined in this case, and that as a matter of law, there is no possibility that Plaintiffs could establish a claim for relief against Clements in state court. Therefore, this Court must examine the substantive laws of Alabama to ascertain whether there is "absolutely no possibility of recovery" by Plaintiffs against Clements.    The existence of any possible viable claim against Clements would immediately defeat diversity jurisdiction and require remand of this case to the Circuit Court of Montgomery County, Alabama. *Buchner v. FDIC,* 981 F. 2d 816, 819 (5th Cir. 1993).  The Court must consider whether there is any possibility that Plaintiffs can establish any cause of action against Clements under either the law or the facts alleged in their Complaint. *Cadalceta v. Standard Fruit Company,* 883 F. 2d 1553, 1561 (11th Cir. 1989).

In *Williamson v. Indianapolis Life Ins. Co.,* 741 So. 2d 1057 (Ala. 1999) and *Stringfellow v. State Farm Life Ins. Co.*, 743 So. 2d 439 (Ala. 1999), the Alabama Supreme Court changed the direction of vanishing premium cases like this one. In both of these cases, the court held that until a policyholder reaches the "vanish date" when

he is supposed to stop paying premiums, he does not have a cause of action for fraud because he has yet to be damaged or his damages are not yet ripe. *Id.* In *Williamson,* the plaintiff purchased a life insurance policy which was only to require ten years of premium payments from him. *Id.* The court held that the plaintiff's damages were not ripe until he reached the policy's ten-year anniversary and that prior to that time he did not have a cause of action for fraud because he could not meet the required element of damages.

As previously stated, the policy at issue did not reach the ten-year vanish date until 2003. The Plaintiffs paid the premiums through 2004, which totaled eleven years. It was not until December 2004 that the Plaintiffs were informed by Transamerica that they would have to pay longer than ten years. The Plaintiffs paid the eleventh premium as instructed and requested by Transamerica. Transamerica could have chosen not to send any premium notices past year ten, but they sent it anyway.

Because the law in Alabama requires this Court to apply the reasoning found in *Williamson* and *Stringfellow* generally in fraud cases, those opinions and the ripeness issue addressed in those opinions apply here. It is clear that the Plaintiffs' claims in the present case did not become ripe for adjudication until they were required to pay additional premiums by the Defendants. This did not happen until December 2004. The Plaintiffs have filed their case within two years of that event and, therefore, their claims are ripe for adjudication under Alabama law.

Based on Transamerica's own arguments in their Brief, there exists a controversy as to whether or not the Plaintiffs were told by Clements that only ten years of out-of-pocket premiums would be required to fund the policy at issue. Transamerica

6

attempts to divert the Court's attention by stating that under the **current interest rates**, Plaintiffs' policy will survive for 39 more years with no further premiums paid or for another 15 years if based upon guaranteed interest rates and factors. As the Court can clearly see, neither of these scenarios equates to Plaintiffs **never** having to pay out-of-pocket premiums beyond the tenth year.   In fact, the Plaintiffs have already paid premiums beyond ten years. If Transamerica had not wanted or required the Plaintiffs to pay the premiums beyond year ten, then why did they send the eleventh annual premium notice in 2004? Why did Transamerica accept the eleventh premium payment and cash Plaintiff's eleventh premium check?

The Alabama Supreme Court has opined that if an insurance policyholder, such as we have here, does not receive the benefit for what they bargained for with an insurance company, the Plaintiff has been damaged. *Boswell v. Liberty National Life Ins. Co.,* 643 So. 2d 580 (Ala. 1994).  This is exactly what has happened to the Plaintiffs.  Transamerica must live with the fact that they billed Plaintiffs for more than ten annual premiums.   To do so is fraudulent and ripened Plaintiffs' damages for adjudication.

### Testimony of Defendant Clements

Most interesting is the testimony of Defendant Clements, the agent who sold Plaintiff the $2,500,000.00 insurance policy at issue.   In this deposition, Clements testified as follows:

> "Q:    Now, you are aware that you sold Wayne [Russell] a Transamerica policy for two and a half-million dollars in face value, and his testimony reflects that he was told that he would only pay on it for ten years. Are you aware of that?

7

Mr. Walker:   Object to the form.

A:     I'm aware of that.  I think that's correct.

Q:     And you even provided him one of those computer illustrations that we talked about showing premium payments for ten years?

Mr. Stewart:  Object to the form.

A:     We went over the illustrations.  Again, that's the way we sell all those policies.

Q:     This was after you had sold him the ten-year, premium offset policy with Phoenix; correct?

A:     Correct.

Q:     Let me ask you a question.  Why did you sell him a Transamerica ten-year, premium offset after you knew the Phoenix ten-year, premium offset didn't work out?

A:     That's what he wanted.  All I can do is get them from the insurance companies in using their illustrations and projections.  I don't do the actuarial work."

Exhibit "A", Clements depo., pp. 77-78.

"Q:     And you understood like Wayne testified to yesterday, that he wanted this two and a half million Transamerica policy where he would only pay out of his pocket for ten years?

A:     That's affirmative.

Q:     You didn't tell him any different, did you?

Mr. Stewart:  Object to the form.

Mr. Walker:   Object to the form.

A:     I told him exactly what Transamerica said that he would have to pay for ten years, premium offset for that face amount at his age, sex, date of birth, all that.

> Q:     That's what Transamerica sent you, and that's what
> you sold Wayne?
>
> A:     That's correct and I don't know – it hasn't been ten
> years has it?"

Exhibit "A", Clements depo., pp. 78-79.  Regardless of the arguments asserted by
Transamerica in their Brief to this Court, Clements' testimony speaks volumes.
Defendant Clements point blank states that he sold the Plaintiff a ten-year pay policy
with Transamerica.  Nothing could be derived from Defendant Clements testimony than
a ten-year pay policy was sold to the Plaintiff.  For Transamerica to assert otherwise
contradicts their own agent's sworn testimony.

### Testimony of Wayne Russell

Again, contrary to the assertions made by Transamerica in their Brief to this
Court, Wayne Russell made specific allegations in his Complaint regarding a ten-year
pay $2,500,000.00 life insurance policy sold by the Defendants and said allegations are
supported not only by Defendant Clements testimony noted above, but by Wayne
Russell's testimony:

> "Q:     And then with the two and a half million policy, you
> are making annual premium payments of twenty thousand
> and some odd dollars.
>
> A:     I had an agreement.  We don't want to pay but ten
> year.  You're not going to pay but ten years.  You be
> conservative, you tell me what is your best ten-year deal."

Exhibit "B", Wayne Russell depo., pp. 112-113.

> "Q:     And on the two and a half million dollar policy, some
> twenty three thousand forty seven dollars in annual premium
> payments were to be made.  And its your testimony that the

9

expectation on that one was that after ten years no additional premium payments would have to be made?

A:    No more."

Exhibit "B", Wayne Russell depo., pp. 113-114.

"Q:    We're talking about the column, the planned annualized premiums. Okay. That shows that you were to make twenty three thousand forty seven dollar annual premiums for the life of the policy, doesn't it?

A:    I bought this policy based on making ten payments. I was told that the proceeds of the policy would fund itself from then on to the death of the second living.

Q:    Alright. On the two million five hundred thousand dollar policy owned by the Trust, your sole complaint on that policy is that you may have to pay beyond the ten year period; is that correct?

A:    That's right."

Exhibit "B", Wayne Russell depo., pp. 209-210.

"Q:    (By Mr. Walker) My question is simple. Does this page on Defendant's Exhibit 19 show you something different than what you were told about ten years?

A:    It was explained to me that this policy would fund itself after ten years and make whatever payments was necessary from then on for the rest of my life."

Q:    And if they went down, you would expect to pay longer than ten years?

A:    I agreed to pay ten years. That was my thinking, that I knew I was going to have to pay ten years, and I agreed to pay ten, and I'm willing to pay ten, no more, no less.

Q:    And if the interest rates and dividends went up, you would expect to get the benefit of that?

A:    Not necessarily. I expect to pay ten years and get what I bought."

Exhibit "B", Wayne Russell depo., pp. 241-242.

> "Q:    (By Mr. Whitehead) Okay.  You would have paid ten
> annual premiums on that policy; correct?
>
> A:    Ten and only ten."

Exhibit "B", Wayne Russell depo., p. 256.

As the Court can now see, Transamerica fails to provide any of the above testimony of Wayne Russell in citing facts to the Court.   When the Court ways Clements' testimony and Wayne Russell's testimony, there is more than a justiciable controversy existing between the Parties.  Plaintiff has more than met his burden, if it exists at all, in proving he has a valid claim against not only resident Defendant Clements, but Transamerica as the underwriter of the life insurance at issue.

## Plaintiffs' Reasonable Reliance on Defendants

The element of "reasonable reliance" was revived as an element of fraud in *Foremost Ins. Co. v. Parham*, 693 So. 2d 409 (Ala. 1997).  The *Foremost* case was a return to the reasonable reliance fraud standard from a brief period of time where the Alabama Supreme Court held that justifiable reliance was the appropriate element of fraud.  Prior to 1989, reasonable reliance had consistently been an element of fraud in Alabama.  *Alabama Farm Bur. Mut. Cas. Ins. Co. v. Griffin,* 493 So. 2d 1397 (Ala. 1986); *Torres v. State Farm Fire & Casualty Co.,* 438 So. 2d 757 (Ala. 1983).   In *Foremost*, the court returned to the reasonable reliance standard most closely associated with the *Torres* case.  By returning to the reasonable reliance standard, the court gave the fact finder greater flexibility in determining the issue of reliance based on all circumstances surrounding a particular transaction.  *Foremost Ins. Co. v. Parham,*

11

693 So. 2d @ 421.  The applicable surrounding circumstances include the mental capacity, educational background, relative sophistication, and bargaining power of the parties. *Id.*

The Court has to decide whether Plaintiffs were reasonable in trying to understand the documents presented to them based on the information communicated to them by Clements and Transamerica.  As the Court has already seen, the testimony of Wayne Russell and Clements are identical as to what was said during these transactions.  Clements readily admitted he represented this policy to only require ten annual payments from Plaintiffs.  Plaintiffs believed him.  Frankly, it appears Clements believed that is what Transamerica would provide Plaintiffs.  After eleven years of premiums, Plaintiffs and Clements now see Transamerica lied.  The testimony of the only two people present during the sale of this policy is **undisputed**.  When this Court considers the convincing testimony of Clements, it should be clear Plaintiffs have proven their burden to achieve remand of this case.

In *Alabama Farm Bureau, Id.,* the insureds in that action sued their insurer and agent for fraud.  That case involved coverage the plaintiffs were told they had on a horse trailer and truck.  After the trailer and truck were involved in a collision, the plaintiffs were informed by the defendants that they had no coverage on the trailer.  In the lawsuit, the defendants contended that the plaintiffs' reliance upon the defendants' statements were not reasonable under the circumstances because the plaintiffs had received a payment receipt and insurance policy which put them on notice that there was no coverage for their trailer under certain circumstances.  In that case, the Alabama Supreme Court held as follows:

12

> "The jury could have found that the plaintiffs had the right to
> rely on his [agent's] representations. Even if plaintiffs had
> obtained a copy of their policy and read it, the question of
> whether they acted as reasonably prudent people who
> exercised ordinary care in relying on Mullin's [agent]
> representations would have been a question for the jury."

*Id.* at 1383. Just as the court held in *Alabama Farm Bureau,* the issue of reasonable reliance should be submitted to a jury. That makes it abundantly clear that the issue of reasonable reliance should also be submitted to a jury in this case. This equates to remand in the present case. The language cited in *Alabama Farm Bureau* is directly on point with the issue of whether Plaintiffs had the right to reasonably rely on what they were told by the Defendants.

Also, "If a party is lulled into a sense of security, however, by misrepresentations of the contents of documents by an agent of the other party, the law imputes to him no knowledge of its contents." *Southern Building and Loan Ass'n v. Dinsmore*, 225 Ala. 550, 144 So. 21 (1932). This is also what happened in the present case. The Defendants "lulled the Plaintiff into a sense of security" by misrepresenting the policy. Plaintiffs were lulled into a false sense of security by Clements on behalf of Transamerica, because they were told premiums would not be required from them after year ten.

## Conclusion

This case is due to be remanded back to state court. Based upon the facts and law stated herein, Plaintiffs move the Court to remand this case back to Montgomery County Circuit Court where it was originally filed.

S/C.  Jay Aughtman
JOSEPH H. "Jay" AUGHTMAN (AUG001)
Attorney for Plaintiffs

OF COUNSEL:

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama  36103-4160
Telephone:    (334) 269-2343
Facsimile:      (334) 954-7555

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of November, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

S/C.  Jay Aughtman
OF COUNSEL

Mr. Steve R Burford
Mr. Charles D. Stewart
Spain & Gillon, L.L.C.
2117 2nd Avenue North
Birmingham, Alabama 35203

Mr. George W Walker, III
Copeland, Franco, Screws & Gill, P.A.
444 S. Perry Street
Post Office Box 347
Montgomery, Alabama 36101-0347