## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **WAYNE RUSSELL; et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NO. 05–972** |
| | ) | |
| **TRANSAMERICA OCCIDENTAL** | ) | |
| **LIFE INSURANCE COMPANY;** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

---

Comes now Transamerica Occidental Life Insurance Company ("Transamerica") and in opposition to the plaintiffs' Motion to Remand states as follows:

### A.    Wayne Russell's Sworn Testimony Establishes the Grounds for Removal

In the Plaintiffs' Motion to Remand, Plaintiffs place great emphasis on the fact that Transamerica did not seek removal in *Russell I.*  Plaintiffs concede that *Russell I* was dismissed without prejudice because the Circuit Court of Montgomery County, Alabama did not have jurisdiciton over the case due to a lack of ripeness (Motion to

Remand p. 2).[1]  Consequently, the proceedings in *Russell I* were void *ab initio* as if

plaintiffs never filed the case.  See,  *Smith v. Union Bank & Trust Co.*, 653 So.2d 933,

934-35 (Ala. 1995)("the words 'without prejudice' in their general adaptation, when

used in a decree, mean that there is no decision of the controversy on its merits, and

leaves the whole subject in litigation as much open to another suit **as if no suit had**

**ever been brought**."(quoting, *Palmer v. Rucker*, 289 Ala. 496, 503, 268 So.2d 773,

780 (1972)(emphasis added). See also,  Rule 41(b), A.R.Civ.P., *Ex parte Capstone*

*Development Corp*, 779 So.2d 1216, 1218 (Ala. 2000); *Sustainable Forests, L.L.C.*

*v. Alabama Power Company*, 2001 WL 586934 (Ala. 2001)(held that "unless the trial

court has before it a justiciable controversy, it lacks subject matter jurisdiction and

any judgment entered by it is void *ab initio*." quoting *Ex parte State ex rel. James*,

711 So.2d 952, 960 n.2 (Ala. 1998)); *Hunt Transition and Inaugural Fund, Inc. v.*

*Grenier*, 782 So.2d 270 (Ala. 2000)(where trial court lacks subject matter jurisdiction

because no justiciable controversy exists, any ruling by it is void *ab initio*); *Ex parte*

*Tiongson*, 765 So.2d 643 (Ala. 2000)(order entered by court lacking jurisdiction is

void); *State Department of Revenue v. R.L. Garner*, 2001 WL 996071 (Ala. Civ. App.

---

[1] Plaintiffs mischaracterize the grounds for the dismissal of *Russell I.*  Although plaintiffs would have this Court believe that they were "forced to dismiss" *Russell I*, in fact plaintiffs consented to the dismissal (Ex. C to Notice of Removal).

2001)(where trial court lacked subject matter jurisdiction, its judgment was void).[2]

Thus, the fact that *Russell I* was not removed has no bearing on the present case.

Plaintiffs further state that "nothing occurred between *Russell I* and *Russell II*

that seperate these cases procedurally that would now give Transamerica a legitimate

reason to remove the case to this Court. ..." and go on to speculate as to the motive

for removal (Motion to Remand p. 3).  Plaintiffs' reasoning is lacking in that

plaintiffs conveniently overlook the most glaring difference between *Russell I* and

*Russell II* which directly supports removal in this case - the sworn deposition

testimony of Wayne Russell.[3]  *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553,1561

(11th Cir.  1989)(sworn testimony may be considered in ruling on removal).  Thus,

instead of being left to the vagaries of plaintiffs' complaint, the Court has the benefit

of Wayne Russell's sworn testimony upon which the Court can determine the nature

of the claims in this case.

---

[2] Plaintiffs' counsel is well aware of the effect of a dismissal without prejudice where the court lacked jurisdiction because the claims before it were not ripe.  See, *A.W. Herndon Oil Co. v. Transamerica Occidental Life Ins. Co.*, 201 F.Supp.2d  1213, 1215-16 (M.D. Ala. 2002)  (Hon. Ira DeMent, presiding).

[3] Plaintiffs also overlook the fact that *Russell I* involved two other parties (Jeffery Caddell, and George Russell) and two additional policies.

3

**B.    The Joinder of Clements in the Notice of Removal was Not Required.**

Plaintiffs also place great significance in the fact that the fraudulently joined defendant, Kirby Clements, did not join in the Notice of Removal.  Again, plaintiffs conveniently ignore the law in that it is not necessary that a fraudulently or improperly joined defendant, such as Clements, join with the other defendants in a petition for removal.  *See Clay v. Brown & Williamson Tobacco Corp.*, 77 F.Supp. 2d 1220 (M.D. Ala.  1999).  Instead of "speaking volumes" about the merits of Transamerica's removal, Clement's lack of joinder says nothing at all.

What does speak "volumes" in this case is that plaintiffs have apparently done a "cut and paste" job in preparing the Motion to Remand instead of focusing on the issues actually raised by Transamerica's Notice of Removal.  For example, plaintiffs incorrectly state that this case was removed from the Circuit Court of Bullock County, Alabama and also refer to "Defendant Ottwiller" and "Defendant Norfleet" in the Motion to Remand neither of which have any connection whatsoever to this case but appear to be some ghosts from motions to remand in the past (Motion to Remand p. 4).  Such inattention to the facts and law relevant to this case may explain the total lack of substance to plaintiffs' Motion to Remand.

**C.    Plaintiffs Concede That Their Claims Are Not Yet Ripe.**

Plaintiffs concede, as they must because of their consent to the dismissal of *Russell I*, that there is no cause of action in this case until such time as the "vanish date" expires and take the position that nothing more is required than the passing of the "vanish date." (Motion to Remand pp. 5-6). Plaintiffs rely upon the Alabama Supreme Court's decision in *Williamson v. Indianapolis Life Ins. Co.*, 741 So.2d 1057 (Ala. 1999), but turn a convenient blind eye to the court's decisions in *Stringfellow v. State Farm Life Ins. Co.*, 743 So.2d 439 (Ala. 1999) and *DeArman v. Liberty Nat'l Life Ins. Co.*, 786 So.2d 1090 (Ala. 2000). In *Stringfellow*, the plaintiff claimed he had been told that he would only have to make premium payments on a vanishing premium policy for nine (9) years. After eight (8) years plaintiff filed a lawsuit against the insurer and agent alleging fraud. In affirming the trial court's granting of summary judgment in favor of the insurer and agent based upon a lack of ripeness, the Alabama Supreme Court held that the plaintiff "would not have had a justiciable controversy **until he was REQUIRED to make a payment after [the vanish date]**." *Stringfellow*, 743 So.2d at 441 (emphasis added).

In *DeArman*, the Alabama Supreme Court explained the rationale for its holding in *Williamson* and *Stringfellow* as it applied to vanishing premium policies:

5

We have addressed the issue of "ripeness" with regard to vanishing-premium cases before. Our first case to address that issue in regard to a vanishing-premium life-insurance policy was *Williamson v. Indianapolis Life Ins. Co.*, 741 So.2d 1057 (Ala. 1999). In *Williamson*, we responded to a certified question from the United States District Court for the Middle District of Alabama. We held that **no cause of action for an alleged fraud related to the purchase of vanishing-premium policy accrues until the policyholder is __REQUIRED__ to make a premium payment after the date upon which the policy was to become self-sustaining.**

*DeArman*, 786 so.2d at 1092 (emphasis added).

The rationale for the Court's holdings in *Williamson* and *DeArman* derive from the nature of a vanishing premium policy which was more recently explained in *ALFA Life Ins. v. Jackson*, 2005 WL 32413 (Jan. 7, 2005):

The underlying theory of ["vanishing premium"] policies is that the cash value of the policies will generate enough income through dividends and interest to pay the premiums on the policies and the policies will thereby sustain themselves. The ability of such policies to sustain themselves depends on mortality rates, expenses, dividends and interest rates.

\*\*\*

In *Williamson*. ...and *DeArman*. ...the plaintiffs-insureds alleged that the defendants-insurers had misrepresented the date when their "vanishing premium" policies would become self sustaining. However, the plaintiffs-insureds had sued the defendants-insurers before the policies were to become self-sustaining according to the alleged representations of the defendants-insurers. **Because, when the plaintiffs-insured sued the defendants-insurers, the capacity of the cash values to sustain the policies depended on interest rates that could change in the future, the prospects that the policies would perform as represented or would fail so to perform in the future**

**were likewise uncertain on the date the suit had been filed.**
Therefore, in *Williamson*, *Stringfellow* and *DeArman*, this Court held
that the claims of the plaintiffs-insureds were not yet ripe for
adjudication when they sued the defendants-insurers.

*ALFA*, 2005 WL 32413 at *6 (citations omitted).

In this case, plaintiffs are careful to allege that "[t]his case is what is referred
to as a 'vanishing premium' case." (Motion to Remand p.2; see also Complaint ¶ 8
and 19). Under Alabama law, in order for the plaintiffs claims to be ripe for
adjudication, in addition to the vanish date having passed, plaintiffs must have been
REQUIRED to make a premium payment in order to keep the policy in force. In this
case, plaintiffs were not required to make the eleventh payment but could have made
no additional payments and the policy would have remained in force for 39 years
under the current interest rates. (Affidavit of John Cox, Ex. G to Notice of Removal).

The fact that plaintiffs were not required to make the eleventh payment should
have been obvious to plaintiffs and the many legal counsel whom they have consulted
with regard to the purchase of the policy at issue and the claims in this case. The
policy devoted an entire page to explaining "PREMIUMS." (Notice of Removal, Ex.
E, p. 5). Had Wayne Russell, or any of the notable legal counsel he employs, merely
reviewed this page they would have known that the only "REQUIRED" premium
payments were for the first five years. Thereafter, premium payments could be paid

at anytime and "[i]f you stop paying premiums after the required premium period, your coverage will continue until the accumulation value minus any existing loan is insufficient to pay the monthly deduction due." (Ex. E to Notice of Removal p. 5). Thus, the policy itself provided that plaintiffs could have ceased making premium payments after the fifth year and the policy would have remained in force so long as the accumulation value was sufficient to pay the monthly deduction. Plaintiffs' feigned ignorance as to these specific terms in the policy are disingenuous because these very issues were raised in *Russell I.*

Plaintiffs also argue that they have been presently damaged because Transamerica cannot assure plaintiffs that no future payments will ever be due and owing to keep the policy in force (Motion to Remand p. 7). Plaintiffs confuse the distinction between the accrual of damages in cases involving a paid-up policy from those involving a vanishing premium policy. As explained by the Alabama Supreme Court in *ALFA*, the very nature of a vanishing premium policy is "that the cash value of the policies will generate enough income through dividends and interest to pay the premiums on the policies and the policies will thereby sustain themselves. The ability of such policies to sustain themselves depends on mortality rates, expenses, dividends and interest rates." *ALFA*, 2005 WL 32413 at*5.

Thus, how long into the future the policy at issue will sustain itself if plaintiffs pay no further premiums will depend on Wayne Russell's mortality, the interest rates paid and the cost of insurance deducted. These are the very same factors that make any claims at this time too remote and speculative to support a cause of action. The fallacy of plaintiffs' position in this regard is demonstrated by the fact that plaintiffs' rely upon *Boswell v. Liberty National Life Ins. Co.*, 643 So.2d 580 (Ala. 1994), to support such a proposition. However, as the Alabama Supreme Court has explained, *Boswell* does not apply to vanishing premium cases which is precisely what plaintiffs claim is at issue in this case. See, *ALFA*, 2005 WL 32413 at *6.

Under the holding of *Boswell*, the plaintiffs would have been damaged when they paid the first premium in November 1994. As such, plaintiffs claims would undoubtedly be barred here by the statute of limitations because plaintiffs had actual knowledge of the alleged misrepresentations when they filed *Russell I* on June 8, 1998 and such claims would be absolutely time barred in this action which was not filed until July 29, 2005. Ala. Code § 6–2–38 (1975).[4] As a result, if this Court agreed with plaintiffs that *Boswell* was controlling, then Clements if fraudulently

---

[4] Section 6-2-38 does include a "savings clause" which provides the "[i]n actions seeking relief on the ground of fraud where the statute has created a bar, the claim must not be considered as having accrued until the discovery by the aggrieved party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." However, this "savings clause" would not rescue the plaintiffs' claims in this case because plaintiffs had actual knowledge of the alleged fraud when they filed *Russell I.*

joined in this case because all claims against Clements would be due to be dismissed with prejudice as barred by the applicable statute of limitations.  See, *Whitlock v. Jackson National Life Ins. Co.*, 32 F.Supp.2d 1286, 1290 (M.D. Ala. 1998)([i]f the only claims against a resident defendant are barred by the statute of limitations, then there 'is no possibility the plaintiff can establish a cause of action against the resident defendant.'  In such a situation, the resident defendant is deemed to have been fraudulently joined.").

## D.    There is No Genuine Issue of Fact as to Any Alleged Misrepresentations.

Plaintiffs claim that there "exists a controversy as to whether or not Plaintiffs' were told by Clements that only ten years of out-of-pocket premiums were required to fund the policy at issue." (Motion to Remand p. 6).  However plaintiffs again ignore the fact that even if such a representation were made to Wayne Russell, his claims are not yet ripe because he has not yet been **required** to make an additional premium payment for the same reasons stated above. (Affidavit of John Cox, Ex. G to Notice of Removal).

Plaintiffs quote extensively from the depositions of Clements and Russell in an attempt to establish that Clements told Russell that the policy at issue "would fund itself after ten years and make whatever payments was necessary from then on for the

rest of my life." (Motion to Remand p. 10). As defendant conclusively demonstrated in the Notice of Removal, Wayne Russell does not recall what Clements told him but only what Russell subjectively believed (Notice of Removal p. 8 ¶ 19). Such quoted testimony does not establish a cause of action against Clements in this case. To the contrary, because this case involves a vanishing premium policy, what Russell claims he was told or understood may very well be true. In Alabama a misrepresentation is an essential element of a fraud claim. *Bryant v. Southern Energy homes, Inc.*, 682 So.2d 3 (Ala. 1996). Plaintiffs do not dispute that with no further premiums paid, the policy will remain in full force and effect for at least the next 15 to 39 years. Plaintiffs do not presume to know when Wayne Russell will die, what the future interest rates or cost of insurance will be or whether Wayne Russell will out live the policy and be required to make an additional premium payment to keep the policy in force. With the amount of cash value in the policy at this time, it is just as likely that the policy will remain in full force and effect until Wayne Russell dies.

This very scenario was aptly demonstrated in *A.W. Herndon Oil Co. v. Transamerica Occidental Life Ins. Co.*, 201 F.Supp.2d 1213, 1215-16 (M.D. Ala. 2002). In *Herndon*, this same plaintiff's counsel filed a similar action in the Circuit Court of Henry County, Alabama alleging that Herndon had been told he would only have to make premium payments for ten years on a life insurance policy. *Herndon*,

201 F.Supp.2d at 1214.  During the pendency of the action, and without ever having been **required** to make additional premium payments, the plaintiff died.  The case was dismissed in the state court for lack of ripeness because the tenth year had not yet passed when plaintiff filed the action.  In *Herndon*, as in this case, the plaintiff elected to make additional premium payments, presumably to support his lawsuit, but Herndon was never required to make any further premium payments and the policy would easily have stayed in force until the time of Herndon's death if no additional premium payments had been made.  In fact, Transamerica tendered the death benefits which the heirs eagerly accepted.  As the Alabama Supreme Court pointed out in *Williamson*, with respect to a vanishing premium policy, if the plaintiff dies while the policy is in force and effect, the plaintiff has received the benefit of the bargain.  *Williamson v.  Indianapolis Life Ins.  Co.*, 741 So.2d 1057, 1060 (Ala.  1999).  As a result, plaintiffs have failed to state a claim against Clements under Alabama law.

### E.    Wayne Russell Did Not Reasonably Rely Upon Any Alleged Misrepresentation.

Plaintiffs concede that the former standard of justifiable reliance was long ago abandoned by the Alabama Supreme Court in favor of a reasonable reliance standard (Motion to Remand pp. 10-11).  Nonetheless, plaintiffs go on to argue that Wayne Russell reasonably relied upon the alleged misrepresentations simply because Russell

believed Clements and did not read the policy, annual reports or other documents Transamerica provided.  Through the adoption of the reasonable reliance standard, it is no longer sufficient that the plaintiff merely claim that he relied upon the representations of the soliciting agent and nothing more.  The Alabama Supreme Court has recently affirmed that its return to the reasonable reliance standard is more than "mere word games" as the plaintiffs would play in this case but is substantive. *Auto-Owners Ins. Co. v. Abston*, 822 So.2d 1187, 1195 (Ala. 2001)("The changes in the law of fraud brought about by our decision in *Foremost [Ins. Co. v. Parham*, 693 So.2d 409 (1997)] are not mere word games; rather, *Foremost* signifies a real and substantive difference in the standards to be applied to fraud cases after March 14, 1997.").

In *Liberty National Life Ins. v. Ingram*, 887 So.2d 222 (Ala. 2004), the Alabama Supreme Court held that the plaintiff in that case did not reasonably rely upon the alleged misrepresentation that the interest rate of 9.75% was a "fixed' rate and would not decline because he had received documents to the contrary:

> In the present case, Cook [the Liberty National agent] allegedly represented to Ingram that the policy he was purchasing would accumulate value based on a fixed rate of 9.75% or more, and that if Ingram paid the premiums for 10 years he would no longer have to pay premiums; however, the policy indicates both that premiums were payable for the life of the policy and that the guaranteed accumulation interest rate was 4%, not 9.75%.  Ingram also received nine yearly

reports that indicated that the actual interest rate during the term of the report was below 9.75%. Ingram was capable of reading the policy and the yearly reports. Ingram did no reasonably rely on Cook's representation.

*Ingram*, supra.

Likewise, in *Alfa Life Ins. v. Green*, 881 So.2d 987 (Ala. 2003), the plaintiffs met with two Alfa agents to discuss the purchase of a life insurance policy in April 1991. The plaintiffs claimed that one of the agents had told them that they would not have to pay any further premiums after the seventh or ninth year. The plaintiffs were provided a "Statement of Policy Values" which set forth the "Guaranteed" and "Projected Vanish" information regarding the policy. Those documents showed that under the "Guaranteed" values, the plaintiff would have to pay premiums for 28 years. These documents also showed that the "Projected Vanish" date was 9 years only if the interest rate credited to the policy remained at 8.5% The plaintiffs paid the premiums on the policy for 9 years but were then told they would be required to pay additional premiums to keep the policy in force because interest rates had declined. The plaintiff's then sued ALFA for fraud and suppression.

ALFA filed a motion for summary judgment arguing, among other things, that the plaintiffs could not have reasonably relied upon the agents' alleged misrepresentations because plaintiffs were provided with documents which were

14

inconsistent with the alleged misrepresentations. The trial court denied ALFA's motion and the case was tried before a jury which returned a verdict in favor of the plaintiffs. On appeal, the Alabama Supreme Court reversed the verdict and rendered judgment in favor of ALFA on the following grounds:

> Based upon this evidence, we hold that the Greens have not shown any reasonable reliance by them on anything Hughes [the ALFA agent] said before the Greens paid the partial premium. It was reversible error for the trial court to refuse to grant ALFA's motion for summary judgment as a matter of law.

*Green*, 881 So.2d at 992-93.

More recently, in *Baker v. Metropolitan Life Ins. Co.*, 2005 WL 78774 (Ala. Jan. 14, 2005), the Alabama Supreme Court addressed reasonable reliance in a similar case. In October 1989, Baker purchased a whole-life policy from MetLife. Baker claimed that the MetLife agent, Baldridge, had told him that if Baker paid the premium for 11 years, the policy would become self-sufficient and Baker would no longer have to pay any out-of-pocket premiums. After 11 years, MetLife informed Baker that the interest rates credited to the policy had been insufficient to fund the payment of future premiums. Baker then sued Baldridge and MetLife alleging fraud and suppression. The defendants moved for summary judgement on the grounds that Baker could not have reasonably relied on any alleged misrepresentation that the

15

policy was guaranteed to be paid-up after 10 years.  The trial court entered summary judgment in favor of the defendants and Baker appealed.

The Alabama Supreme Court, citing *Ingram* and *Green*, affirmed the trial court's ruling that  Baker could not, as a matter of law, have reasonably relied upon any such misrepresentation.  The Court noted that Baker was 27 years old when he applied for the insurance, was a highschool graduate, was literate and owned his own business.  Baker had been given a premium schedule which contained information under the heading "years payable" and under which was written "73." Baker was also provided a document entitled "Accelerated Payment Plan" which stated that Baker's ability to have the future premiums paid by policy dividends depended on the "dividend scale in effect at the time the policy is issued" but cautioned that dividends were not guaranteed and changes in the dividend scale "after issue may increase or decrease the number of years shown."  The Court held that "in light of the conflict between Baldridge's alleged misrepresentations and the documents presented to Baker when he entered into the transaction in question, it cannot be said that Baker reasonably relied on Baldridge's representations."

*Foremost* and its progenies, *Ingram*, *Green* and *Baker*, are controlling in this case.  As shown in the Notice of Removal and uncontradicted by plaintiffs in the Motion to Remand, Wayne Russell was an experienced and exceptionally well

16

educated business man with prior experience in using life insurance policies for estate

planning purposes. In fact, Wayne Russell had retained lawyers, accountants and

others to assist him with his estate planning and, in particular, the purchase of the

policy at issue. Russell's policy specifically stated that premiums were only

REQUIRED to be paid for five (5) years and, thereafter, the plaintiffs could cease

premiums payments and the policy would stay in force so long as the cash value was

sufficient to pay the cost of insurance. Wayne Russell also received the Cost &

Benefit Statement which showed that premiums of $23,047 would be due under the

guaranteed factors for up to 20 years (Ex. F, p.2 to Motion to Remand) as did the

Table of Policy Values and Benefits contained within the Policy (Ex. E, p. 2B to

Motion to Remand). The plaintiffs also received annual Statements of Policy Value

on the policy at issue but Wayne Russell likewise disregarded those statements

(Russell depo. p. 131, Ex. B). These documents clearly revealed numerous times the

current credited interest rates and the length of time the premiums would be payable

under the guaranteed and current factors. Russell, who is the president of a large oil

business and a college graduate, received these documents which clearly disclosed

to him what he now claims was misrepresented or suppressed. Russell cannot hide

behind his refusal to read the documents he received in 1994 and throughout to avoid

the consequences of his inattention that, as a matter of law, he could not have

17

reasonably relied upon the alleged oral misrepresentations.  Where the plaintiff's claims against the agent are barred as a matter of law due to a lack of reasonable reliance, the agent is fraudulently joined in the action.  See, *Owens v. Life Ins. Co. Of Georgia*, 289 F.Supp.2d 1319 (M.D. Ala.  2003);in *Jabour v.  Life Insurance Company of North America*, 362 F.Supp.2d 736 (S.D. Miss.  2005); *Ross v. Citifinancial, Inc.*, 344 F.3d 458 (5th Cir.  2003)(affirming district court's refusal to remand based upon fraudulent joined because plaintiff could not show justifiable reliance on alleged misrepresentation of non-diverse defendant); *Morris v.  Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir.  2000)(affirming denial of motion to remand based upon fraudulent joinder because plaintiff could not have reasonably relied upon non-diverse defendant's alleged misrepresentation).

To avoid the Alabama Supreme Court's re-adoption of the reasonable reliance standard in *Foremost*, *Ingram*, *Green* and *Baker,* plaintiffs rely upon *Alabama Farm Bur. Mut. Cas. Ins. Co.  v.  Griffin*, 493 So.2d 1379 (Ala.  1986), for the proposition that Wayne Russell had no duty to read the Transamerica policy.  Plaintiff's reliance upon *Griffin* is misplaced.  In *Griffin,* the plaintiffs had purchased a "full coverage" automobile policy and believed that it also covered a trailer they used for transporting horses.  The trailer was subsequently damaged in an accident and the insurer denied coverage.  A jury returned a verdict in favor of the plaintiffs and the insurer appealed.

18

Unlike this case, in *Griffin* the plaintiffs had not received a copy of the automobile policy until AFTER the accident at issue.  *Griffin*, 493 So.2d at 1382 (plaintiffs were given a receipt binding coverage in October 1982, the accident at issue occurred in February 1983 but the plaintiffs did not receive a copy of the policy until April 1983). Consequently, prior to the loss the plaintiffs in *Griffin* did not have before them a document which would have disclosed to them the alleged misrepresentation. Moreover, in *Griffin*, the Court pointed out that even had the plaintiffs received and read the policy before the accident, the policy itself was not clear as to whether the trailer was covered.  *Griffin*, 493 So.2d at 1383.  In this case, it is undisputed that Wayne Russell received the policy, Cost & Benefit Statement when the policy was delivered and he received Annual Reports for over a decade before filing this action. Also, contrary to *Griffin* and as acknowledged by Russell in his deposition, there is no ambiguity as to the language contained in the policy, Cost & Benefit Statement and Annual Reports which would have prevented Russell from learning of the alleged misrepresentation  (Russell depo. pp. 241-242, Ex. B to Notice of Removal).  As a result, plaintiffs could not have reasonably relied upon the alleged misrepresentations as a matter of law and, consequently, plaintiffs have no colorable claim against Clements.

**E.    Plaintiffs' Cannot Apply Lulling to Avoid imputation of the Policy Language.**

As an afterthought, plaintiffs for the first time argue that Wayne Russell cannot be held responsible for his failure to read the Policy and other documents Transamerica provided him because he was "lulled into a sense of security. .." (Motion to Remand p. 13). In this case, Russell's only excuse for not knowing the terms of the Policy, Cost & Benefit Statement and Annual Reports was that he simply never read them (Russell depo. pp. 124 and 131, Ex. B to Notice of Removal). The Alabama Supreme Court has steadfastly rejected the argument that the refusal to read documents is a means to toll the statute of limitations. See, *Lott v. Tarver*, 741 So.2d 394 (Ala. 1999)(summary judgment in favor of defendant affirmed because closing documents showed plaintiff had 15 years remaining to be paid on mortgage instead of 10 they claimed they had been told); *Locklear Dodge City, Inc. v. Kimbrell*, 703 So.2d 303 (Ala. 1997)(Court reversed jury verdict in favor of plaintiff and rendered verdict for defendant holding statute of limitations not tolled because plaintiff "took a risk" when she purchased car without reading terms of documents which were contrary to what she claimed to have been told); *Liberty National Life Insurance Company v. Parker*, 703 So.2d 307 (Ala. 1997)(jury verdict in favor of plaintiff reversed and judgment rendered in favor of insurer on grounds that fraud claims

barred by statute of limitation where documents plaintiff received from insurer contradicted alleged oral misrepresentations).  In fact, it was the absence of a duty to read contractual documents under the justifiable reliance standard which ultimately led the Alabama Supreme Court to reject that standard in favor of the reasonable reliance standard.  *Foremost Ins. Co. v. Parham,* 693 So. 2d 409, 418, 421 (Ala. 1997).

Moreover, "lulling" only applies where there has been a misrepresentation as to the **content** of the document itself.  Under Alabama law, "lulling" has consistently been defined as follows:

> [T]he law imputes no knowledge of a contract's contents to a party who signs the contract without having read or having knowledge of its contents, if that party is lulled into a feeling of security because of a misrepresentation of the contents of the contract or because of special circumstances, relationships, or disability of the party relating to the contracts execution.

*Holman v.  Joe Steele Realty, Inc.*, 485 So.2d 1142, 1145 (Ala. 1986).

In the absence of "any misrepresentation of the content of the agreement or the employment of trick or artifice that would lull the [plaintiff] into a false sense of security" there can be no "lulling."  Id.  In this case, there is no contention that Clemens used "trick or artifice" to mislead Wayne Russell as to the content of the policy at issue.  Wayne Russell simply failed to read the terms of his policy as well

21

as the other documents he received from Transamerica concerning his policy and is now simply looking for a way to excuse his own neglect. Accordingly, because plaintiffs have failed to state a cause of action against Clemens his joinder in this action is fraudulent and does not preclude removal to this Court.

## CONCLUSION

When this Court considers Wayne Russell's sworn testimony, as it should, there is no colorable claim alleged against Clements. Wayne Russell's claims have not changed since the time he initially filed this lawsuit in June 1998 at which time plaintiffs conceded that their claims were not ripe because the "vanish date" had not expired with Russell being required to make an additional premium payment. Although the "vanish date" has now expired, Russell has not been REQUIRED to make any additional premium payments to keep the policy in force. To the contrary, the plaintiffs could pay no further premiums and the policy would remain in force from 15 to 39 years. Plaintiffs try to salvage some type of claim against Clements by arguing that the fraud claims state a cause of action against Clements under Alabama law. Again, Wayne Russell's own sworn testimony and the documents he received from Transamerica show that Russell could not, as a matter of law, have reasonably relied upon Clement's alleged misrepresentations because the documents provided to Russell specifically detailed the premium payment requirements of the policy.

When plaintiffs' claims are held up to the light of Wayne Russell's deposition testimony and the documents he received from Transamerica over a decade ago, no colorable claims exist against Clements and he has been fraudulently joined.

/s/ *Charles D. Stewart*
Charles D. Stewart (ASB 0303–S77E)
Steve R. Burford (ASB 6886–B40S)
Attorneys for Transamerica Occidental
Life Insurance Company

SPAIN & GILLON, L.L.C.
The Zinszer Building
2117 Second Avenue North
Birmingham, Alabama 35203
Ph:    (205) 328–4100
Fax:   (205) 324–8866
email:  cds@spain–gillon.com
        srb@spain–gillon.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on **November 28, 2005**, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Joseph H. Aughtman**
  jay.aughtman@beasleyallen.com nancy.mcdill@beasleyallen.com

**Jere L. Beasley**
  libby.rayborn@beasleyallen.com jere.beasley@beasleyallen.com

**Steve R. Burford**
  srb@spain-gillon.com bjd@spain-gillon.com

**Wilson Daniel Miles, III**
  dee.miles@beasleyallen.com autumn.lindsey@beasleyallen.com

**Charles D. Stewart**
  cds@spain-gillon.com jam@spain-gillon.com,KCG@spain-gillon.com

**George Walton Walker, III**
  walker@copelandfranco.com michaud@copelandfranco.com


and I hereby certify that I have mailed by United States Postal Service the document to the following non–CM/ECF participants:

[No manual recipients]


Respectfully submitted,

/s/ *Charles D. Stewart*
Charles D. Stewart (ASB 0303–S77E)
Steve R. Burford (ASB 6886–B40S)
**SPAIN & GILLON, L.L.C.**
The Zinszer Building
2117 Second Avenue North
Birmingham, Alabama 35203
Ph:    (205) 328–4100

Fax:   (205) 324–8866
email: srb@spain-gillon.com
(ASB 6886–B40S)